The document below is hereby signed.

Signed: October 29, 2018



_S. Martin Teel Jr._

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MICHELLE RUTH CASH, | ) | Case No. 16-00663 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL A JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 17-10018 |
| MICHELLE RUTH CASH, | ) | |
| | ) | Not for Publication in |
| Defendant. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER
<u>RE DEFENDANT'S MOTION TO DISMISS</u>

This adversary proceeding relates to real property located
at 1235 Irving Street, NE, Washington, D.C. 20017 (the
"Property").  The debtor, Michelle Ruth Cash, as the defendant in
this adversary proceeding, has filed _Debtor/defendant Michelle R._
_Cash's Motion to Dismiss the Amended Complaint of Plaintiff_
_Michael A. Jackson_ ("_Motion to Dismiss_") (Dkt. No. 47) seeking
dismissal of the _Third Amended Complaint_ (Dkt. No. 46) pursuant

to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012, for failure to state a claim upon which relief can be granted.

Cash contends, first, that based on positions Jackson took in a civil action in the Superior Court of the District of Columbia, Case No. 2013 CA 004159 R (RP), he is estopped from asserting that his signature on the *Special Warrenty* [sic] *Deed* ("*Deed*") at issue is a forgery and that he did not sign the *Deed* or the related *Secured Agreement* at issue in the presence of the notary, Jacqueline Littlejohn.  Cash contends that Counts I through V and VII fail based on such estoppel and must be dismissed.  Cash contends, second, that the statute of limitations bars Count IV, to the extent Count IV is a quasi-contract-based claim, and Count VI.

For the reasons set forth below, I find that the statute of limitations bars Count VI to the extent that it is a cause of action at law seeking damages on a breach of contract claim and I will grant dismissal as to Count VI to that extent.  However, to the extent the Count VI seeks any identifiable and viable equitable remedies, Count VI shall survive.  Cash asserted that Count IV is time-barred by the statute of limitations for the first time in her reply.  The parties have more fully argued that issue in their motions for summary judgment.  Accordingly, the court will address that issue by way of the motions for summary

judgment.  Cash has not shown that it is appropriate to estop
Jackson from asserting that his signature on the *Deed* is a
forgery and that the notary was not present to properly notarize
the *Secured Agreement* and the *Deed*.  Accordingly, I will deny the
remainder of the *Motion to Dismiss*.

I

On December 27, 2016, Cash filed a voluntary petition
commencing the underlying bankruptcy case, Case No. 16-00663.
Cash exempted the Property under her homestead exemption.  On May
19, 2017, Jackson filed a complaint initiating this adversary
proceeding, and on January 3, 2018, he filed the *Third Amended
Complaint* at issue.[1]

The facts, according to the *Third Amended Complaint* and
matters of public record, are these.

Jackson purchased the Property on February 21, 2006, for
$580,000.  Jackson took out two mortgages to finance the purchase
of the Property.  In 2007, Jackson faced financial difficulty and
feared that the Property would fall into foreclosure.

---

[1]  Both parties have proceeded as though the filing of the
complaint initiating this adversary proceeding and the continued
prosecution of the adversary proceeding did not violate the
automatic stay of 11 U.S.C. § 362(a).  The claims in this
adversary proceeding obviously need to be resolved for purposes
of the bankruptcy case, and even though Cash can be viewed as
forfeiting the defense of the automatic stay, the parties should
file a motion to annul the automatic stay as to this adversary
proceeding if the automatic stay technically barred Jackson's
pursuit of the adversary proceeding.

In 2007, Cash had worked for Chesapeake Mortgage as an assistant to the broker for five years.  Cash had the responsibility, among other things, to prepare mortgage documents.  Additionally, Cash had taken classes in mortgage lending.

The parties agree that on February 10, 2007, Jackson and Cash, along with Jackson's wife, met at a Red Lobster Restaurant where the parties executed a *Secured Agreement*, which both parties agree was a contract for the sale of the Property to Cash.  The *Secured Agreement* and the *Deed* purport to have been signed by Jackson before Jacqueline Littlejohn, as a notary public, on February 10, 2007, the date of the meeting at Red Lobster.  On September 10, 2015, Cash recorded the *Deed* with the District of Columbia Recorder of Deeds.  The *Deed,* prepared by Cash, purports to convey the Property from Jackson to Cash, and on its face makes Cash the record owner of the Property.

In the *Third Amended Complaint*, Jackson alleges that he never executed  the *Deed*; that Littlejohn, who was Cash's co-worker at Chesapeake Mortgage, was not present at the meeting to witness Jackson's execution of the *Secured Agreement*; that Littlejohn notarized the *Secured Agreement* and *Deed* outside of the presence of Jackson; and that Jackson, after the meeting at Red Lobster, did not acknowledge to Littlejohn that the execution of the *Secured Agreement* or the *Deed* was his act and deed.

4

The *Secured Agreement* provided:

The Seller (Michael A. Jackson) agrees as follow:

1.  The Seller will receive $15,000.00 cash for Sale of Property;

2.  The Seller will Deed property to Michelle R. Cash in Fee Simple as Sole Owner;

3.  The Seller will keep EMC Mortgage Corporation in his name for two years from the date of this agreement;

4.  The Seller will keep the Homeowners Insurance Policy in his name for two years from the date of this agreement; and

5.  The Seller will file the property interest on his income taxes for two years from the date of the Agreement tax year.

The Buyer (Michelle R. Cash) agrees as follow:

1.  The Buyer will pay legal, title and filing fees;

2.  The Buyer, in fee simple as Sole Owner shall assume the monthly payments to EMC Mortgage Corporation as of 1st of February, 2007;

3.  The Buyer will refinance the mortgage from EMC Mortgage Corporation after two years or until the buyer is able due to lender's approval and settling on the property; and

4.  The Buyer will transfer from the Homeowners insurance after two years or until number 3 of this agreement by buyer has been fully completed and resolved.

Jackson alleges that he understood that the *Secured Agreement* set forth three conditions whereupon he would transfer ownership of the Property to Cash.  He contends that the agreement was that Jackson would transfer the Property to Cash only after Cash (1)

5

paid Jackson $15,000; (2) properly and timely paid both mortgages for two years, commencing February 1, 2007; and (3) paid off the mortgages through refinancing at the end of two years. Jackson alleges that none of those conditions were met; nevertheless, Cash filed the *Deed*, with a forged signature, with the D.C. Recorder of Deeds.

Section IV(A) below lays out the facts of public record relating to Cash's contention that Jackson took positions in the Superior Court that estop him from asserting that his signature on the *Deed* is a forgery and that he did not sign the *Deed* or the *Secured Agreement* at issue in the presence of Jacqueline Littlejohn. Section V(A) lays out additional facts relating to Cash's contention that Jackson's breach of contract claim is time barred by the statute of limitations.

## II

A court will dismiss a complaint if it does not plead sufficient facts to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint. *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017). A court assumes that all allegations made in the complaint are true when considering a Rule 12(b)(6) motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations and facts in the complaint must be construed in the plaintiff's favor. *Kowal*

*v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). "In deciding whether to dismiss a claim under Rule 12(b)(6), the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Id.* "A court may take judicial notice of public records from other proceedings." *Jones v. Lieber*, 579 F. Supp. 2d 175, 179 (D.D.C. 2008). "The movant has the burden of proof on a 12(b)(6) motion." *Burrell v. University of Texas Medical Branch*, No. H-09-3932, 2010 WL 1640939, at *2 (S.D. Tex. April 21, 2010).

III

Jackson's alleged failure to have the *Deed* "acknowledged and certified" in the presence of Littlejohn, as required by D.C. Code § 42-401,[2] is not fatal to the effectiveness of the *Deed*.

---

[2]   D.C. Code § 42-401 provides:

Any deed conveying real property in the District, or interest therein, or declaring or limiting any use or trust thereof, executed and acknowledged and certified as provided in §§ 42-101, 42-121 to 42-123, 42-306, and 42-602 and delivered to the person in whose favor the same is executed, shall be held to take effect from the date of the delivery thereof, except that as to creditors and subsequent bona fide purchasers and mortgagees without notice of said deed, and others interested in

Because that section:

> deals with acknowledgment, certification, and recordation
> as protections for "creditors and subsequent bona fide
> purchasers," . . . [t]hose requirements do not bar the
> operation of a signed, sealed, and delivered deed against
> parties and their assignees.

*Lumpkins v. CSL Locksmith, LLC*, 911 A.2d 418, 425 (D.C. 2006)

(quoting *Clay Props., Inc. v. Washington Post. Co.*, 604 A.2d 890,

894 (D.C. 1992) (en banc) and *Munsey Trust Co. v. Alexander,

Inc.*, 42 F.2d 604 (D.C. Cir. 1930)); *see also Juergens v. Urban

Title Services, Inc.*, 533 F. Supp. 2d 64, 79 (D.D.C. 2008).[3]  The

*Deed*, however, would be void if the signature on the *Deed* does

not belong to Jackson.  *See* D.C. Code § 42-306(b) (requiring the

use of a deed "signed and sealed by the grantor" for a transfer

of an interest in property for a term of longer than one year to

be effective).

IV

Cash contends that Jackson should be equitably estopped or

judicially estopped from asserting that his signature on the *Deed*

is a forgery and that the *Secured Agreement* and *Deed* were not

notarized by Littlejohn in Jackson's presence because Jackson has

_____

said property, it shall only take effect from the time of
its delivery to the Recorder of Deeds for record.

[3]  The purported signature of Jackson on the *Deed* is
followed beside it by the word "[SEAL]."  Jackson does not
contend that this is not a signature under seal.  The word "seal"
next to the signature is, standing alone, sufficient to create a
sealed instrument.  *Murray v. Wells Fargo Home Mortg.*, 953 A.2d
308, 318 (D.C. 2008).

8

previously admitted in the Superior Court action to signing the *Secured Agreement* and the *Deed* in the presence of the notary. Cash contends that if Jackson is estopped from alleging that the *Deed* is a forgery, then Counts I through V and VII must be dismissed because they are all dependent on the *Deed* being a forgery.  For the following reasons, I do not find cause to estop Jackson from contending that his signature on the *Deed* is a forgery and that Littlejohn did not properly notarize the documents.

A.  Pertinent Facts

In opposing the *Motion to Dismiss*, Jackson alleges that he did not discover that his signature on the *Deed* was a forgery until approximately five months after filing a *Pre-Trial Statement* in the civil action, which was filed on May 28, 2015.

Jackson made several limited admissions and assertions in Case No. 2013 CA 004159 R (RP) in the Superior Court that he had signed the *Secured Agreement* and the *Deed* in the presence of the notary.  At page 4 of his motion for summary judgment (filed on November 17, 2014) Jackson admitted to executing the *Deed* but with a footnote stating "Jackson does not believe he executed a deed, but for the purpose of this motion Jackson assumes that the deed is a 'legally valid document.'"  Jackson also submitted, along with the same motion for summary judgment, the *Secured Agreement* and asserted: "The Secured Agreement and Special

9

Warranty deed attached to this motion are true and accurate copies of the original. (This stipulation is made solely for the purpose of this motion.)"

Additionally, in an affidavit ("*Affidavit*") filed by Cash, as part of a motion for partial summary judgment on November 17, 2014, regarding Cash's claim in Count IV of her counterclaim, under the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, Cash asserted:

> Michael Jackson and I signed the "Secured Agreement" and the "Special Warranty Deed" before a Notary.  Rhonda Jackson, Michael Jackson's wife, was also present.

In his *Response to Affidavit of Michelle Cash* ("*Response*") filed on December 4, 2014, Jackson responded:

> RESPONSE: **Agreed.**  Cash personally drafted both of these documents. (Cash Dep., Apr. 9, 2014, 11:4-5, 14:6-9.) She stated that she drafted these documents due to her experience working for a mortgage company, for which she took classes to train in the mortgage business. (Cash Dep., at 6:6-7.)  She then paid to have the documents that she drafted reviewed by a law firm of her choosing.

(Emphasis added).

Furthermore, in a *Pre-Trial Statement*, filed on May 28, 2015, Jackson affirmatively asserted that he "conveyed the real property to Defendant pursuant to a 'Special Warrenty Deed.' (sic).  Defendant Cash began to reside in the Property and treated the Property as her own."  The *Pre-Trial Statement* also has several statements that indicate that Jackson was alleging that Cash was a tenant including the statement that "the

defendant Cash continued to enjoy her tenancy" after failing to meet the conditions of the *Secured Agreement*, and a recitation of Jackson's claim that "Defendant Michelle Cash is a Tenant" under section D (Claims and Defenses).

In a single order, the Superior Court resolved several motions (including Jackson's motion for summary judgment and Cash's motion for partial summary judgment).  The Superior Court made the determination in its order that there was a dispute of material fact as to what Jackson and Cash intended when they executed the *Secured Agreement* and the *Deed*, noting that Jackson argued that the *Secured Agreement* and the *Deed* were ambiguous and should be construed against Cash as the drafter of the documents.

B.   Equitable Estoppel

Equitable Estoppel is the:

> general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it would be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Davis v. Wakelee*, 156 U.S. 680, 689 (1895).  Equitable estoppel will only apply if the parties and the issues are the same.  *Galt v. Phoenix Indemnity Co., Inc.*, 120 F.2d 723, 726 (D.C. Cir. 1941).  Under the doctrine of equitable estoppel, "[t]he party seeking to invoke the estoppel, however, must have been an adverse party in the prior proceeding, must have acted in

reliance upon his opponent's prior position, and must now face
injury if a court were to permit his opponent to change
positions." *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir.
1980). "[T]he party urging the estoppel 'must show that he had
done something or omitted to do something in reliance upon the
other party's conduct by which he will now be prejudiced if the
facts are shown to be different from those upon which he relied'"
*Galt*, 120 F.2d at 726. "Where the parties have equal knowledge
or opportunity of knowledge, or where the facts are known equally
to both, or both have means of ascertaining them, there can be no
estoppel." *Id.* at 726 (quoting *Thompson v. Park Sav. Bank*, 96
F.2d 544, 549 (D.C. Cir. 1938)) (internal quotes deleted). The
party asserting equitable estoppel has the burden of proof. *In
re Wertz*, 557 B.R. 695, 706 (Bankr. E.D. Ark. 2016).

Illustratively, in *In re Hardy*, No. 16-00280, 2017 WL
2312852, at *2 (Bankr. D.D.C. May 26, 2017), the court held that
equitable estoppel barred the debtor from asserting a lease on
property of the estate that had not been listed in the debtor's
schedules. The Court had issued an order approving turnover of
real property to the trustee. *Id.* at *1. If the debtor was
allowed to assert a lease, the trustee would have been harmed
because he was unaware of the lease to assume or reject it within
the statutory deadline under 11 U.S.C. § 365(d)(4). *Id.* at 2.
The deadline had passed and the lease would have been rejected

12

under operation of law.  *Id.*  Accordingly, the court held that equitable estoppel prevented the debtor from asserting the lease.

Cash submitted three documents to show that Jackson took the position in the Superior Court that he signed the *Deed* and signed both the *Secured Agreement* and the *Deed* in the presence of Littlejohn.  Only one of these documents actually supports Cash's contention.

Jackson's motion for summary judgment filed in the Superior Court on November 17, 2014, does not demonstrate that Jackson was taking a position that the *Deed* was a validly signed deed. Jackson twice disclaimed acknowledging the *Deed* in his motion for summary judgment.  In the first instance, Jackson included a footnote stating "Jackson does not believe he executed a deed, but for the purpose of this motion Jackson assumes that the deed is a 'legally valid document.'"  Furthermore, at the end of the document, Jackson's *Statement of Material Facts Not in Dispute* attached to his motion for summary judgment further stated: "The Secured Agreement and Special Warranty deed attached to this motion are true and accurate copies of the original. **(This stipulation is made solely for the purpose of this motion.).**" (Emphasis added).  These disclaimers placed Cash on notice that Jackson was making these admissions only within the confines of the motion for summary judgment, and were not admissions for the whole civil action.

13

Nor does the *Pre-Trial Statement* filed on May 28, 2015, unambiguously demonstrate that Jackson acknowledged that the *Deed* was one that he had signed.  Although it does admit that there was a conveyance by a "Special Warrenty [sic] Deed," the *Pre-Trial Statement* makes clear Jackson's view that Cash was not entitled to rights under the deed prepared until she complied with the *Secured Agreement*.  The *Pre-Trial Statement* supports the position that Jackson gave Cash possession of the property as a prospective purchaser who was to be treated as a tenant if she failed to perform under the *Secured Agreement*.  Jackson conveyed possession of the property to Cash for immediate use, as a tenant, but Jackson alleges that it was his understanding that full ownership would not be conveyed until after the conditions of the *Secured Agreement* were met.  The rest of the *Pre-Trial Statement* treats the conveyance of possession as a lease, not ownership, once Cash defaulted under the *Security Agreement*.  The sentence following the admission states "Defendant Cash began to reside in the Property and *treated* the Property *as* her own." (Emphasis added).  This statement is very odd if it is an admission of ownership.  Instead, the statement emphasizes that Cash acted like the property was her own, but in fact it was not. Additionally, the *Pre-Trial Statement* states that Cash "continued to enjoy her tenancy" after she failed to meet the terms of the *Secured Agreement*.  The term "tenancy" would not be appropriate

14

if Jackson was admitting that Cash owned the property.
Furthermore, section D (Claims and Defenses) of the *Pre-Trial
Statement* shows that Jackson's claim in the Superior Court was
that "Defendant Michelle Cash is a Tenant."

The only document that shows an inconsistent position is
Jackson's *Response* filed on December 4, 2014, in opposing Cash's
motion for partial summary judgment regarding Cash's claim that
Jackson violated the D.C. Consumer Protection Procedures Act
("DCCPPA"). Jackson now claims that he did not know of the
forgery of his signature until five months after filing the *Pre-
Trial Statement*, which was filed May 28, 2015. If true, that
would justify Jackson's inconsistent position.[4] It is also
possible that Jackson was admitting to the facts solely for the
purposes of Cash's motion for summary judgment, but if so, he
should have added a disclaimer to his *Response*, the same as he
did in his motion for summary judgment.

Nevertheless, the issues in the Superior Court case and in
this adversary proceeding are not the same. The issue being

---

[4] Cash could argue that this allegation is highly suspect
given the fact that the *Deed* was the subject of the Superior
Court proceeding and copies of the *Deed* were attached to multiple
motions; that it is hard to believe that Jackson did not see the
*Deed*, and that Jackson did not notice his forged signature
sooner; and, furthermore, that this allegation does not explain
why he agreed that the notary was at the Red Lobster meeting.
Jackson almost certainly saw the notary's mark and signature on
the documents during the Superior Court action. Nevertheless,
issues of credibility are not to be decided on a motion to
dismiss.

addressed in Cash's motion for summary judgment, prompting the
*Affidavit* and *Response*, as the Superior Court's order disposing
of Cash's motion reveals, was centered on whether Cash had
established that Jackson was a "merchant" under the DCCPPA with
respect to events occurring *after* June 2007 (and thus after the
execution of the *Secured Agreement* and *Deed* in February 2007) and
whether Cash was a "consumer" under the DCCPPA, with the Superior
Court concluding that there was a factual dispute whether Cash
obtained the property for a personal, family, or household
purpose.  The issue was not whether Jackson signed the *Deed* or
whether Littlejohn notarized it.

Additionally, Jackson argued in the Superior Court that
under the *Secured Agreement*, ownership of the property was not to
convey to Cash until after all the terms of the *Secured Agreement*
were met.  His contention was that the terms of the *Secured
Agreement* had not been met, so it was irrelevant whether the *Deed*
was validly signed because Cash was not entitled under the
*Secured Agreement* to treat the *Deed* as effective and to record
the *Deed* (which was not recorded until September 10, 2015).  The
issue in this adversary proceeding is whether Cash fraudulently
conveyed the property to herself via a forged signature.  The
Superior Court issue, sounding in contract law and based on how
the terms of the *Secured Agreement* operated on the execution and
acknowledgment of the *Deed*, if treated as genuine, is completely

16

separate and different from the issue of whether Cash committed fraud by forging a signature and having the documents illegally notarized.

Most importantly, equitable estoppel is inappropriate here because Cash does not show how she relied on Jackson's former position to her detriment.  Cash has not provided any evidence that she acted in reliance, or omitted to act in reliance, upon Jackson's earlier position.  Unlike in *Hardy*, where the trustee was prevented from making the determination whether to assume or reject the lease, there is no evidence that Cash did, or did not, do anything in reliance on Jackson's position that the *Deed* was a valid document in the Superior Court action.

Cash may claim that she filed the *Deed* with the D.C. Recorder of Deeds under a presumption that Jackson acknowledged the *Deed* as a valid legal document.  However, Jackson was challenging the *Deed* and Cash's ownership of the property during the whole Superior Court proceeding.  While he may not have been specifically arguing that his signature was a forgery, or that the document was not properly notarized by Littlejohn, there is no indication that Jackson ever took the position that the *Deed* was valid.

Furthermore, Cash does not show that she did not know the facts or have access to them.  Cash was equally at the meeting with Jackson at the Red Lobster on February 10, 2007, and has the

17

same means to ascertain the truth of what happened at that meeting as Jackson.  In fact, Cash would have a superior knowledge as to whether she had Jackson's signature on the *Deed* forged, and whether she had Littlejohn fraudulently notarize the *Secured Agreement* and *Deed*.

Moreover, Cash does not show how she would be injured or prejudiced if the court allows Jackson to assert the position that the signature on the *Deed* is a forgery and that Littlejohn did not witness the signing of the documents.  Cash has the burden of showing that all the elements of equitable estoppel are met.  A general assertion that "there can be little question that Plaintiff would derive 'an unfair advantage' if not estopped from maintaining his assertion that the Deed is a forgery," *Motion to Dismiss* at 9, does not meet that burden.

For all these reasons, I will reject Cash's invocation of equitable estoppel.

C.   Judicial Estoppel

Judicial estoppel is the general proposition that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  The purpose of judicial estoppel is

> "to protect the integrity of the judicial process," *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (C.A.6

18

1982), by "prohibiting parties from deliberately changing
positions according to the exigencies of the moment,"
*United States v. McCaskey,* 9 F.3d 368, 378 (C.A.5 1993).

*Id.* at 749-750.  Judicial estoppel "is an equitable doctrine

invoked by a court at its discretion."  *Id.* at 750 (quoting

*Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).  There is

no "general formulation of principle" whereon judicial estoppel

may be properly invoked.  *Id.*  Nevertheless, the doctrine's

factors include 1) an inconsistent later position, 2) success in

persuading a court to accept the party's earlier position so that

acceptance of the later position would create "the perception

that either the first or the second court was misled," and 3)

whether the party would derive an unfair advantage or impose an

unfair detriment on the opposing party if not estopped.  *Id.*

There may be "[a]dditional considerations [that] may inform the

doctrine's application in specific factual contexts."  *Id.* at

751.  "Judicial estoppel precludes a party from obtaining relief

under one theory and later taking a contradictory position."  *In

re Network Access Solutions, Corp.*, 330 B.R. 67, 77 (Bankr. D.

Del. 2005).  Any doubt as to whether a position is inconsistent

should be resolved by assuming there is no inconsistency and

allowing the matter to be resolved on the merits.  *Comcast Corp.

v. F.C.C.*, 600 F.3d 642, 647 (D.C. Cir. 2010).

Judicial estoppel is not warranted here because there is no

evidence that Jackson is playing "fast and loose with the

courts." *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.

1953).   The only instance Cash has provided where the Superior

Court implicitly viewed Jackson as asserting that the *Deed* is a

valid document is the Superior Court's determination that finding

the intent of the parties in drafting the documents was a

material question of fact.   There, the court represented only

that Jackson argued that because the *Secured Agreement* is

ambiguous, it should be construed against Cash who wrote it, and

had nothing to do with whether Jackson executed the *Deed*.   The

Superior Court's order does not show any particular reliance on

Jackson's representation that the documents were validly signed

and properly notarized.   Accordingly, the Superior Court's order

does not evidence that this court, by allowing Jackson to take

the position that his signature is a forgery and that the

documents were not properly notarized by Littlejohn, would give

the appearance that the judicial process is being abused or that

Jackson appeared to be figuratively pulling the wool over either

court's eyes.   Accordingly, Cash has not shown that the integrity

of the judicial process has been compromised to warrant judicial

estoppel.

Importantly, Jackson never received relief from his earlier

position.   In the leading Supreme Court case, *New Hampshire*, the

Court emphasized the fact that New Hampshire benefitted from its

earlier position in the previous case.   532 U.S. at 752.   The

Court would not allow New Hampshire to challenge that previous ruling for a more beneficial ruling. *Id.* This case is not the same. Jackson never succeeded in the Superior Court case. In fact, Jackson's motion for summary judgment was denied. Furthermore, the previous case did not issue any judgment, decree, or judicial order based on the premise that the documents were signed and properly notarized.

Furthermore, Cash has not shown how she will be injured or prejudiced if the court allows Jackson to proceed with his allegations that his signature and the notarizations are forgeries. Cash does not say how Jackson would receive an unfair advantage over her. In fact, the opposite is more likely to be true. Cash can always assert Jackson's previous admissions to impeach Jackson's testimony. Accordingly, if any advantage can be taken, Cash is the party with the advantage.

Accordingly, judicial estoppel does not apply.

V

A.   Count VI: Breach of Contract Claim for Damages

Count VI principally seeks monetary damages, and those claims are barred by the statute of limitations for the following

21

reasons.[5]  The statute of limitations for an action "on a simple

contract, express or implied," is three years.  D.C. Code § 12-

301(7).  In response to the Motion to Dismiss, but not in the

*Third Amended Complaint* itself, Jackson asserts for the first

time that he terminated the Secured Agreement in November 2012.

In June 2013, Jackson filed the complaint commencing the Superior

Court civil action seeking to evict Cash from the Property.  That

civil action was dismissed on February 1, 2017, by a stipulation

of dismissal that Jackson had filed.  Previously, on December 27,

2016, Cash had commenced the underlying bankruptcy case, Case No.

16-00663.  Cash exempted the Property under her homestead

exemption.  On March 28, 2017, Jackson filed another action in

the Superior Court, Case No. 2017 CA 002021 R (RP).  On May 19,

2017, Jackson filed a complaint initiating this adversary

proceeding, and on January 3, 2018, filed his *Third Amended*

*Complaint*.  Cash filed her *Motion to Dismiss* on January 3, 2018.

Cash points to Count VI as resting on two breaches that had

---

[5]  In opposing the *Motion to Dismiss*, Jackson alleges that
he did not discover that his signature had been forged on the
*Deed* until five months after filing on May 28, 2015, the *Pre-*
*Trial Statement* in the Superior Court civil action.  The *Deed* is
ineffective if Jackson's signature is a forgery, and other counts
(not sounding in contract law) seek to declare the *Deed* invalid
on that basis.  However, Cash breached the contract (the *Secured*
*Agreement*) only to the extent that she failed to comply with an
obligation imposed on her by the *Secured Agreement* (paying
$15,000 timely and so forth).  Utilizing a forged *Deed* would not
have been an act in breach of the *Secured Agreement*, but a wrong
separate from her breaches of the *Secured Agreement*: trying to
obtain title to the Property via using the forged *Deed.*

occurred by February 1, 2009.  Specifically, she argues:

> Plaintiff's breach of contract theory is predicated on
> the allegation that, under the terms of the Secured
> Agreement, Debtor was required to pay Plaintiff $15,000
> on or before February 1, 2009, and breached the Secured
> Agreement by failing to fulfill this obligation.  Compl.
> ¶¶ 26, 28, 91-92.  His breach of contract theory is
> further predicated on the allegation that, under the
> terms of the Secured Agreement, Debtor was required to
> assume, refinance, and "pay off" the mortgage in full on
> or before February 1, 2009.  *Id*. ¶¶ 26-27, 29, 93-96.
> Accordingly, by the very terms of the Complaint,
> Plaintiff contends that Debtor breached the Secured
> Agreement by failing to perform her contractual
> obligations by February 1, 2009 – within two years of
> execution of the Secured Agreement.  *Id*. ¶¶ 26-29, 91-96.
> Because this alleged breach is well outside of the
> District of Columbia's three-year statute of limitations
> for breach of contract, Count VI should be dismissed as
> well.

A breach of contract on or around February 1, 2009, was more than

three years prior to the filing Cash's bankruptcy case in 2016

and the filing of this adversary proceeding on May 19, 2017, and

accordingly, the breach of contract claim based on these breaches

is time-barred.

Jackson does not meaningfully dispute that the two breaches

identified by Cash had occurred by February 1, 2009.  The

additional facts pertinent to the statute of limitations defense

are these.  Jackson asserts that he terminated the *Secured

Agreement* in November 2012.  In June 2013, more than three years

after February 1, 2009, but less than three years after the

alleged termination of the *Secured Agreement*, Jackson filed the

complaint commencing the first Superior Court civil action, an

action seeking to evict Cash from the Property.  That civil
action was dismissed on February 1, 2017, by a stipulation of
dismissal that Jackson had filed.  As already noted, on December
27, 2016, Cash had filed her voluntary petition commencing the
underlying bankruptcy case, Case No. 16-00663.  On March 28,
2017, Jackson filed another civil action in the Superior Court,
Case No. 2017 CA 002021 R (RP).  On May 19, 2017, Jackson filed
the complaint initiating this adversary proceeding, and, after
obtaining authorization to do so, filed on January 3, 2018, the
*Third Amended Complaint* that is the subject of the *Motion to
Dismiss.*

Jackson contends that the breach of contract did not take
place until he terminated the *Secured Agreement* in November 2012.
However, the breaches that allegedly justified termination of the
*Secured Agreement* occurred in February 2009, and waiting to
terminate the *Secured Agreement* does not alter the date that the
breaches occurred.  Moreover, regardless of when the breaches
took place, either in 2009 or in 2012, the right to bring an
action on contract based on those breaches occurred more than
three years prior to the filing of Cash's bankruptcy case in
2016, and the filing of this adversary proceeding in 2017, and
accordingly Jackson was time-barred from suing for breach of
contract.

Jackson contends that the statute of limitations was tolled

24

because the claims have been in litigation since 2013. The
filing of the complaint in the Superior Court in 2013 was more
than three years after the breaches occurred in 2009. However,
for reasons explored below, even if the complaint in the Superior
Court was timely, the statute of limitations had run when Jackson
filed his complaint commencing this adversary proceeding.

The District of Columbia recognizes only two types of
equitable tolling, the lulling doctrine and the discovery rule.
*East Graphic Arts Industry Joint Pension Trust*, 718 A.2d 153, 156
(D.C. 1998). Jackson has not shown that either of those bases
for tolling apply.

The District of Columbia requires courts to be strictly
bound by its statutes of limitations. *Atiba v. Washington Hosp.
Ctr.*, 43 A.3d 940, 941 (D.C. 2012). Commencing an action will
toll the statute of limitations with respect to pursuit of the
claims in that action so long as the complaint remains pending.
*Varela v. Hi-Lo Powered Stirrups, Inc.*, 424 A.2d 61, 70 (D.C.
1980) (failing to serve complaint until after statute of
limitations would otherwise have expired did not require
dismissal of the complaint: the timely complaint tolled the
statute of limitations); *Ciralsky v. Central Intelligence Agency*,
355 F.3d 661, 672 (2004) (noting that a timely action tolls the
statute of limitations as to claims asserted by later amendments
of the complaint because under Fed. R. Civ. P. 15(c) an

"amendment of a pleading relates back to the date of the original pleading" under specified circumstances).  However, tolling of the statute of limitations does not occur on the basis that a case was timely brought in another jurisdiction.  *Bond v. Serano*, 566 A.2d 47, 49 (D.C. 1989) (the filing of a case in the United States District Court did not toll the statute of limitations during its pendency when the case was dismissed from the District Court for lack of subject matter jurisdiction); *Namerdy v. Generalcar*, 217 A.2d 109, 113 (D.C. 1966) (the statute of limitations did not toll when a timely filed action in New York was subsequently dismissed for lack of personal jurisdiction over the defendant).  *See also  Dupree v. Jefferson*, 666 F.2d 606 (D.C. Cir. 1981) (a timely filed civil action that was later dismissed without prejudice did not serve to toll the statute of limitations during the period of its pendency); *Ciralsky*, 355 F.3d at 672; *Sayyad v. Fawzi*, 674 A.2d 905 (D.C. 1996) (following *Dupree*); *Stewart-Veal v. District of Columbia*, 896 A.2d 232, 237 (D.C. 2006) (following *Ciralsky*); *Holderson v. Sandi Group*, 934 F. Supp. 2d 147, 156 (D.D.C. 2013) (following *Ciralsky*).  In other words, decisions have continued to reject the doctrine of equitable tolling except in cases that fall under the lulling doctrine or the discovery rule.  *See Kamerow v. District of Columbia Rental Hous. Comm'n*, 891 A.2d 253, 142 (D.C. 2006); *East Graphic Arts Industry Joint Pension Trust*, 718 A.2d at 156;

26

*Simpson v. District of Columbia Office of Human Rights*, 597 A.2d
392, 401 (D.C. 1991).

Jackson filed two cases in the Superior Court.  The first
case was filed in 2013, and was subsequently dismissed on
February 1, 2017 (after Cash commenced the bankruptcy case, Case
No. 16-00663, and before the commencement of this adversary
proceeding), pursuant to a stipulation filed by Jackson.  That
dismissal occurred after the filing of Cash's bankruptcy case,
but Jackson has not requested that the dismissal be declared void
as in violation of the automatic stay of 11 U.S.C. § 362(a).  It
was the estate, not Jackson, that was entitled to the protection
of the automatic stay, and which benefitted from the dismissal.
In these circumstances, I treat the dismissal as not being a void

act.[6]  Based on the dismissal of the civil action, *Dupree* and

*Ciralsky* hold that no tolling of the statute of limitations

occurred.

Moreover, the civil action was not an action for breach of

contract damages but instead a landlord-tenant complaint seeking

to evict Cash as a tenant.  Even if the civil action were still

pending, it could not toll the statute of limitations on a claim

for damages for breach of contract.

The second civil action was filed March 28, 2017, and that

filing violated the automatic stay.  It was filed after the first

civil action had been dismissed.  Under *Dupree* and *Ciralsky*, upon

dismissal of the first civil action, the statute of limitations

---

[6]  In *Pope v. Manville Forest Prod. Corp.*, 778 F.2d 238, 239
(5th Cir. 1985), the court dealt with an action against a debtor
that was dismissed, after the debtor's bankruptcy case commenced,
by a district court *sua sponte* based on the res judicata effect
of a ruling in another court.  The court held that although no
specific reference is made to "dismissal" of judicial proceedings
in § 362(a)(1), which refers to the "commencement or
continuation" of a judicial proceeding, the provision "must be
construed to apply to dismissal as well." *Id.*  However, *Pope*
acknowledged that "perhaps a stipulation of dismissal" would be
an exception to this observation. *Id.*
There are several decisions which view a voluntary dismissal
as not violating the automatic stay. *See Slay v. Living Ctrs E.,
Inc.*, 249 B.R. 807, 807 (S.D. Ala. 2000) (citing *Chase Manhattan
Bank, N.A. v. Celotex Corp.*, 852 F.Supp. 226, 228 (S.D.N.Y.
1994); *Gallagher v. Sports Pub., LLC*, 2009 WL 294400, at *2 (C.D.
Ill. Feb. 4, 2009); *Villarreal v. City of Laredo*, No. 5:03-cv-11,
2007 WL 2900572, at *5 (S.D. Tex. Sept. 28, 2007), *aff'd in part
sub nom. Villarreal v. M.G. Builders*, 354 Fed. Appx. 177 (5th
Cir. 2009) (a non-bankruptcy court may grant dismissal, so long
as doing so is not inconsistent with the purposes of the
bankruptcy stay).

runs as though the first civil action had never been filed.  The
first Superior Court case filed in 2013 was dismissed before
Jackson filed the second action.  Accordingly, the second action
(even if not treated as filed in violation of the automatic stay)
did not extend the tolling of the statute of limitations.

As already noted above, this case was filed more than three
years after any breach of contract occurred.  Accordingly, Count
VI must be dismissed to the extent that it rests on a claim in
law for breach of contract.

B.    Count VI: Equitable Remedies

Jackson asks the court in Count VI to "[a]ward such other
relief in law or in equity as this Court deems just and proper."
Insofar as Count VI is a claim in law for breach of contract, it
is barred by the statute of limitations.  Jackson is not,
however, barred from asserting any equitable remedies under Count
VI that may be available.

The only equitable remedy of which the court is aware is a
vendor's lien.  Because the parties did not address it, the
following is only the court's preliminary analysis of the issue
of the statute of limitations in enforcing a vendor's lien.  As
announced at the hearing on the motion to dismiss, the parties
are to file any briefs on the issue by October 31, 2018, and any
replies by November 14, 2018, or within 7 days of filing of the
opposing party's brief if later.

"A vendor's lien is a right arising in equity by means of
which an unpaid vendor, who took no other security, is empowered
to reach the property--the title to which he had transferred--to
satisfy the debt which constitutes the consideration for the
transfer." *Kosters v. Hoover*, 98 F.2d 595, 596-97 (D.C. Cir.
1938).  A vendor's lien is based on the principle that "[w]hen
one person has got the estate of another, he ought not, in
conscience, to be allowed to keep it without paying the
consideration." *Braiden's Adm'x*, 67 U.S. 458, 460 (1862).  The
statute of limitations follows the right to entry.  *Peters v.
Suter*, 9 D.C. 516, 518 (1876).  This is "because it is a deed of
conveyance, the rights under which are not barred except by the
lapse of . . . the right of entry for that period." *Baltimore &
O.R. Co. v. Trimble*, 51 Md. 99, 112 (1879).  "[A] vendor's lien
is *not* an interest or estate in realty, but, rather, is merely a
remedy for the debt.  *In re Paradise Homes, Inc.*, No. 07-60389,
2008 WL 619330, at *3 (Bankr. S.C. Ill. March 5, 2008).  Under
D.C. Code § 12-301(1), an action for "the recovery of lands" may
be brought within 15 years after the right to maintain the action
accrues.

If the court finds that Jackson did transfer title to the
Property to Cash, then equity may grant Jackson a vendor's lien
on the debt Cash has not paid.  The statute of limitations period
for a vendor's lien is the same period as an action in ejectment,

30

which is 15 years in the District of Columbia.  Therefore, the
statute of limitations on a vendor's lien is also 15 years, well
within the time frame for Jackson's adversary proceeding.

There may be additional equitable remedies Jackson may be
entitled to under Count VI, for breach of contract, but Jackson
has not identified any and thus Count VI will be dismissed except
as to a possible vendor's lien claim, unless Jackson files within
14 days after entry hereof, a list of the additional equitable
remedies he wishes to pursue.

Under D.C. Code § 12-301(8), an action "for which a
limitation is not otherwise specially prescribed" must be brought
within 3 years after the right to maintain the action accrues.
But if Cash's claims sounded in trusts and restitution, "it has
been held that the statute of limitations is not strictly
applicable to such a suit in the District of Columbia.  See *Kosty
v. Lewis*, 115 U.S. App. D.C. 343, 319 F.2d 744 (1963); *Haliday v.
Haliday*, 56 App. D.C. 179, 11 F.2d 565 (1926).  Rather the
guiding principle is one of laches.  *Naselli v. Millholland*, 88
U.S. App. D.C. 237, 188 F.2d 1005 (1951)."  *Watwood v. Yambrusic*,
389 A.2d 1362, 1363 n.3 (D.C. 1978).  In general, equitable
claims are governed by laches, not by a statute of limitations.
*George Washington University v. Bier*, 946 A.2d 372, 378 n.8 (D.C.
2008); *see* also *King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186-
87 (D.C. 1978) (court refused to apply the statute of limitations

to equitable claims), *but see Construction Interior Systems, Inc.*
*v. Donohoe Companies, Inc.*, 813 F. Supp. 29, 33 n.4 (D.D.C. 1992)
("This statute of limitations period would also apply to any
equitable claims, such as unjust enrichment, arising from the
same conduct.").  If Jackson asserts any additional equitable
claims under Count VI, Cash would be free to argue that they
would be barred under the doctrine of laches.

VI

For the aforesaid reasons, it is

ORDERED that Cash's *Motion to Dismiss* (Dkt. No. 47) is
GRANTED IN PART and a separate order will be entered that will
dismiss Count VI with prejudice as time-barred by the statute of
limitations to the extent that it asserts a claim at law for
breach of contract.  It is further

ORDERED that except as to the equitable remedy of a possible
vendor's lien claim, unless Jackson files within 14 days after
entry of this order, a list of the additional equitable remedies
he wishes to pursue, Count VI will be dismissed with prejudice as
to any equitable remedies.  It is further

ORDERED that by October 31, 2018, the parties shall file
briefs regarding whether the court should dismiss Count VI as to
the equitable remedy of a vendor's lien, that is, whether Jackson
may assert the equitable remedy of a vendor's lien under Count
VI, with those briefs to address, in addition to any other issues

the parties wish to bring to the court's attention, the following issues:

1.   any challenges as to whether the remedy would apply in this case;

2.   any cap on the debt that Jackson could recover under a vendor's lien, *e.g.*, whether Jackson could not claim consequential damages because the seller takes the risk of non-payment's consequential effects; and

3.   how to address the defendant's, Michelle Ruth Cash's, alleged breach of failing to refinance the existing mortgage, *e.g.*, whether a vendor's lien includes the amount necessary to pay off the existing mortgage.

It is further

ORDERED that a party shall file any reply to the other party's brief regarding whether Jackson may assert the equitable remedy of a vendor's lien under Count VI by November 14, 2018, or within 7 days after the filing of the brief if later.  It is further

ORDERED that Cash's *Motion to Dismiss* (Dkt. No. 47) is DENIED except to the extent granted pursuant to the foregoing and except that the issue of whether the *Motion to Dismiss* should be granted as to equitable remedies under Count VI shall await further determination.

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.