The document below is hereby signed.

Signed: October 29, 2018



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MICHELLE RUTH CASH, | ) | Case No. 16-00663 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL A JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 17-10018 |
| MICHELLE RUTH CASH, | ) | |
| | ) | Not to be published in |
| Defendant. | ) | West's Bankruptcy Reporter. |
| | ) | |

MEMORANDUM DECISION AND ORDER RE
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

This adversary proceeding relates to property located at

1235 Irving Street, NE, Washington, D.C. 20017 (the "Property").

The plaintiff, Michael A. Jackson, has filed a *Motion for Partial*

*Summary Judgment* ("*Motion*") (Dkt. No. 50) seeking a judgment in

his favor on his breach of contract and unjust enrichment claims.

The debtor, Michelle Ruth Cash, as the defendant in this

adversary proceeding, has filed an *Opposition to Plaintiff Michael A. Jackson's Motion for Partial Summary Judgment and Cross-Motion for Partial Summary Judgment* (Dkt. No. 55) ("*Cross-Motion*") seeking a ruling that Jackson executed the *Special Warrenty* [sic] *Deed* ("*Deed*") for the Property that Cash recorded with the District of Columbia Recorder of Deeds, that Jackson's breach of contract and unjust enrichment claims are time-barred by the statute of limitations, that she did not breach the contract, and that Jackson is not entitled to equitable relief because of unclean hands.

The court has dismissed the breach of contract claim, Count VI, to the extent it seeks a legal remedy, as time-barred by the statute of limitations in its *Memorandum Decision and Order re Defendant's Motion to Dismiss*. Accordingly, the parts of the *Motion* and *Cross-Motion* relating to the breach of contract claim are moot and will be dismissed.

For the reasons stated below, the court will deny the remainder of Jackson's *Motion*; will grant in part Cash's *Cross-Motion* to dismiss Jackson's unjust enrichment claim; and, finally, will deny Cash's *Cross-Motion*.

I

The relevant facts are as follows. Jackson purchased the Property on February 21, 2006, for $580,000. Jackson took out two mortgages to finance the purchase of the Property. The first

2

mortgage (the "EMC Mortgage") was a 30-year, interest-only adjustable rate mortgage with an original loan amount of $464,000 and with interest fixed for the first five years at 6.5%.  The second mortgage (the "Real Time Mortgage") was a 15-year fixed rate mortgage with an original loan amount of $116,000 and an interest rate of 10.375%.

The parties agree that on February 10, 2007, Jackson and Cash, along with Jackson's wife, met at a Red Lobster Restaurant where the parties executed a *Secured Agreement*, which both parties agree was a contract for the sale of the Property to Cash.  The *Secured Agreement* and the *Deed* purport to have been signed by Jackson before Jacqueline Littlejohn, as a notary public, on February 10, 2007, the date of the meeting at Red Lobster.  On September 10, 2015, Cash recorded the *Deed* with the District of Columbia Recorder of Deeds.  The *Deed,* prepared by Cash, purports to convey the Property from Jackson to Cash, and on its face makes Cash the record owner of the Property.

In the *Third Amended Complaint to Recover Fraudulent Acquired Property* (Dkt. No. 46) ("*Third Amended Complaint*"), Jackson alleges that he never executed the *Deed*, and that Littlejohn, who was Cash's co-worker at Chesapeake Mortgage, was not present at the meeting to witness Jackson's execution of the *Secured Agreement*, that Littlejohn notarized the *Secured Agreement* and *Deed* outside of the presence of Jackson, and that

3

Jackson, after the meeting at Red Lobster, did not acknowledge to Littlejohn that the execution of the *Secured Agreement* or the *Deed* was his act and deed.  The papers are unclear as to whether Jackson admits to signing a deed: Jackson in some places denies signing a deed, or says it is unclear whether a deed was signed during the February 2007 meeting, and in other places admits to conveying property by a deed.  The papers do clearly indicate that Jackson denies signing the *Deed* that was recorded with the Recorder of Deeds.

The *Secured Agreement* provided:

The Seller (Michael A. Jackson) agrees as follow:

1.   The Seller will receive $15,000.00 cash for Sale of Property;

2.   The Seller will Deed property to Michelle R. Cash in Fee Simple as Sole Owner;

3.   The Seller will keep EMC Mortgage Corporation in his name for two years from the date of this agreement;

4.   The Seller will keep the Homeowners Insurance Policy in his name for two years from the date of this agreement; and

5.   The Seller will file the property interest on his income taxes for two years from the date of the Agreement tax year.

The Buyer (Michelle R. Cash) agrees as follow:

1.   The Buyer will pay legal, title and filing fees;

2.   The Buyer, in fee simple as Sole Owner shall assume the monthly payments to EMC Mortgage Corporation as of 1st of February, 2007;

3.  The Buyer will refinance the mortgage from EMC Mortgage Corporation after two years or until the buyer is able due to lender's approval and settling on the property; and

4.  The Buyer will transfer from the Homeowners insurance after two years or until number 3 of this agreement by buyer has been fully completed and resolved.

Cash took possession of the Property where she operated an assisted living facility.  She also began to make the mortgage payments directly to the mortgage companies.  Cash made payments of approximately $2,969.37 per month toward the first mortgage and approximately $1,050.27 per month toward the second mortgage. Jackson contends that the payments (or some of them) were not timely.

On November 12, 2012, Jackson sent Cash a letter cancelling the *Secured Agreement* because Cash at no point made a payment of $15,000 to Jackson, and Cash failed to obtain financing to refinance the mortgages under her own name.  Sometime around 2011, Jackson had asked Cash to make the monthly mortgage payments directly to him.  Jackson and Cash executed an agreement on May 1, 2011, whereby Cash would pay the mortgage payments to Jackson directly.  The amount of interest on the EMC Mortgage dropped to 2.75% on March 1, 2011.  Jackson never told Cash of the drop in the interest rate.  Cash continued to make payments on the EMC Mortgage of $2,969.37 per month, that included interest at the higher rate of 6.5% that previously existed.  In

January 2013, Cash learned of the drop in the interest rate and stopped paying interest based on the higher interest rate. Accordingly, Cash contends that because Cash was making monthly payments to Jackson in excess of what was actually owed on the mortgages, she paid more than the $15,000 required under the *Secured Agreement*.[1]

The parties dispute whether they entered into a landlord-tenant relationship. Cash has testified in her affidavit that she never had a landlord-tenant relationship with Jackson. At oral argument on October 17, 2018, Jackson's counsel conceded

---

[1] By the court's calculation, interest at 2.75% on the $464,000 principal amount of the interest-only first mortgage was $1,063.33 per month, whereas interest at 6.75% on the $464,000 principal amount was $2,513.33 per month, a difference of $1,450.00 per month. Cash's making payments to Jackson for 18 months (from May 2011 through December 2012) of $1,450.00 more than was owed each month on the mortgages would have resulted in Cash having paid Jackson $26,100.00 more than was owed on the mortgages.

that there was no written lease.[2]  Instead, Jackson's counsel
asserted that because Cash had defaulted under the *Secured
Agreement* and Jackson had terminated the *Secured Agreement*, Cash
had no rights in the Property and that upon her continuing
nevertheless to live in the Property there was an implied lease
entitling Jackson to rent based on the fair market rental value
of the Property.  Sometime around November 2012, Jackson hired
Marty Wynn and his property management company, Phase 3 Network,
Inc., to help Jackson manage the Property.  In December 2012,
Phase 3 Network began to send letters to Cash demanding payment

---

[2]  This position appears to be contrary to Jackson's
confusing answers to interrogatories, which indicated:

> My Wife and I went to Michelle Cash's office where we
> presented her with a lease.  Michelle Cash signed the
> lease in the presence of my Wife and I.  It was a
> standard lease and the terms were the same as the secured
> agreement.  The lease was produced by Michelle Cash.  We
> also added that she would buy the furniture for
> $15,000.00.  The lease included that within the two year
> period of her purchasing the house, if the value of the
> house increased, Michelle Cash would pay an additional
> $15,000.00.  She moved into the property and we agreed to
> allow her to make payments directly to the mortgage
> company.  Approximately five (5) months after entering
> the agreement for the purchase of the property Michelle
> Cash started paying late beyond thirty (30) days. The
> late payments became habitual.  I demanded that she pay
> me directly.  Approximately four years later Michelle
> Cash could not get financing to perform the contract.  My
> wife and I sent Michelle Cash a letter to terminate the
> purchase contract.

Jackson has produced no written lease, and the above-quoted
language does not say he, as a landlord, executed the lease.  The
court treats Jackson, through counsel, as having receded from
contending that there was a written lease.

7

of rent on the Property, referring to Jackson as the landlord and Cash as the tenant.  The letters also demanded payment of thousands of dollars in late fees.

On March 7, 2013, Jackson issued a *30-Day Notice to Quit*.  A few days later, on March 12, 2013, Jackson sent Cash a *30 Day Notice to Correct or Vacate* giving Cash until midnight on April 11, 2013, to pay for overdue rent and late fees, totaling $11,052.25, or vacate the Property.  Cash did not pay the rent and late fees or vacate the Property, and on June 3, 2013, Jackson sought possession of the Property by filing suit in the Superior Court of the District of Columbia.  This action was dismissed on February 2, 2017, by a stipulation of dismissal filed by Jackson.  Jackson then filed another suit in Superior Court on March 10, 2017, which has been stayed by the automatic stay.

Cash filed a voluntary petition initiating the underlying bankruptcy case, Case No. 16-00663, on December 27, 2016. Jackson filed a complaint initiating this adversary proceeding on May 19, 2017.  He filed the *Third Amended Complaint* at issue, on

January 3, 2018.[3]

## II

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), made applicable under Fed. R. Bankr. P. 7056.  A genuine dispute of material fact exists when the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Inferences on underlying facts should be viewed in the light most favorable toward the nonmoving party.  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge should not weigh the evidence when considering a motion for summary judgment.  *Anderson*, 477 U.S. at 249.

The moving party has the burden to show that there is no genuine dispute and the court should look at the moving party's papers critically.  *Washington v. Cameron*, 411 F.2d 705, 710 (D.C. Cir. 1969).  To meet this burden, the moving party "must show that the nonmoving party 'fail[ed] to make a showing

---

[3]  As I noted in the *Memorandum Decision and Order re Defendant's Motion to Dismiss*, both parties have proceeded as though the commencement and prosecution of this adversary proceeding did not violate the automatic stay of 11 U.S.C. § 362(a).  The claims in this adversary proceeding obviously need to be resolved for purposes of the bankruptcy case, but the parties should file a motion to annul the automatic stay as to this adversary proceeding if the automatic stay technically barred Jackson's pursuit of the adversary proceeding.

sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial.'" *Dormu v. District of Columbia*, 795 F.Supp.
2d 7, 17 (D.D.C. 2011) (quoting *Celotex Corp. v. Catrett*, 477
U.S. 317, 322 (1986)).

    "Once the moving party has made an adequate showing that a
fact cannot be disputed, the burden shifts to the party opposing
summary judgment to 'set forth specific facts showing that there
is a genuine issue for trial.'" *Ames v. Nielsen*, 286 F. Supp. 3d
70, 78 (D.D.C. 2017) (quoting *Anderson*, 477 U.S. at 250).   In
responding to a motion for summary judgment, the plaintiff may
not rely on the allegations of his complaint. *Grimes v. District
of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).   "To defeat a
motion for summary judgment, the non-moving party must offer more
than mere unsupported allegations or denials." *Dormu*, 795
F.Supp. 2d at 17.   "Instead, the non-moving party must provide
affidavits or other competent evidence setting forth specific
facts showing that there is a genuine issue for trial." *Id.*

                                III

    Cash contends that Jackson's unjust enrichment claim must be
dismissed as time-barred because the underlying contract is also
time-barred.   Cash's analysis is focused on Count IV as an
alternative to Jackson's breach of contract claim.   For the
following reasons, the court agrees that unjust enrichment is

time-barred insofar as it is based on the same acts as Jackson's
breach of contract claim and relates to Jackson conveying the
Property to Cash under the *Secured Agreement*.[4]  However, there
may be other theories of unjust enrichment supported under Count
IV that are not time-barred by the statute of limitations.

The statute of limitations for a claim of unjust enrichment
is three years.  *Boyd v. Kilpatrick Townsend & Stockton, LLP*
("*Boyd I*"), 79 F. Supp. 2d 153, 158 n.3 (D.D.C. 2015).  "It is
undisputed that the statute of limitations begins to run when a
claim accrues, and that a cause of action accrues when its
elements are present, so that the plaintiff could maintain a
successful suit."  *News World Comm., Inc. v. Thompsen*, 878 A.2d
1218, 1222 (D.C. 2005).  "Unjust enrichment occurs when: (1) the
plaintiff conferred a benefit on the defendant; (2) the defendant
retains the benefit; and (3) under the circumstances, the
defendant's retention of the benefit is unjust."  *Id.*  A party
may be unjustly enriched by holding title to property.  *Gray v.*

---

[4]  Furthermore, it may be inappropriate to allow Jackson to
pursue an unjust enrichment claim in equity as a substitute to
the breach of contract claim at law where Jackson did not timely
pursue his breach of contract remedies.  *Kisner v. Broome*, No. 1
CA-CV 16-0502, 2017 WL 6462245, at *8 n.3 (Ariz. Ct. App. Dec.
19, 2017) ("[t]hough unjust enrichment may provide grounds for
recovery in 'the absence of a remedy provided by law,' . . .
equity would not be served if that element were held to include
cases where the absence of a remedy at law is the result of the
plaintiff's own lack of diligence in pursuing an otherwise-
available legal remedy" (quoting *Wang Elec., Inc. v. Smoke Tree
Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012)); *Nutt Corp.
v. Howell Road, LLC*, 721 S.E.2d 447, 450 (S.C. App. 2011).

*Gray*, 412 A.2d 1208, 1210 (D.C. 1980).  "A claim for unjust enrichment only accrues, however, when the enrichment becomes unjust; the statute of limitations 'starts to run upon the occurrence of the wrongful act giving rise to a duty of restitution.'"  *Id.* at 1223 (quoting *Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 596 N.Y.S.2d 435, 437 (N.Y. App. Div. 1993)).  When a withholding becomes unjust is a question of fact.  *Boyd v. Kilpatrick Townsend & Stockton* ("*Boyd II*") 164 A.3d 72, 80 (D.C. 2017)*.*

In *Thompsen*, the plaintiff approached the defendant, the publisher of a daily newspaper, with an idea for a family magazine.  878 A.2d at 1219.  The defendant showed great interest in the plaintiff's idea and requested that the plaintiff submit several of her ideas to the defendant for review.  *Id.* at 1220.  However, the defendant later said it would produce a family magazine, but would not pay the plaintiff for her idea because it was not novel.  *Id.*  Two years later, the defendant published the magazine.  *Id.*  The plaintiff filed suit the year after the magazine was first published.  *Id.*  The court held that the statute of limitations on the plaintiff's unjust enrichment claim began to run on the date that the newspaper company told her it would not pay her for her idea, even though the newspaper company did not make a profit from the idea for another two years.  *Id.* at 1225.

In *Boyd II*, the plaintiff was asked by defendants to lobby a bill in Congress.  164 A.3d at 76.  The plaintiff expressed his intention to be paid for his services, and the defendants told the plaintiff not to worry about payment.  *Id.*  After the bill was passed, the parties never communicated and the defendants never paid the plaintiff for his services.  *Id.* at 77.  The plaintiff sued the defendants.  *Id.*  The court addressed whether under District of Columbia law the statute of limitations runs from the "last rendition of services," a test *Thompsen* appeared to endorse, but did not specifically adopt, in cases where the plaintiff had not demanded payment and defendant had not specifically refused to pay.  *Id.* at 70.  The court held that the determination of when the enrichment became unjust was a question of fact left for the jury to decide.  *Id.* at 80.

Cash contends that since this unjust enrichment claim is based on a quasi-contract theory, the statute of limitations began to run on February 10, 2007, when the parties executed the *Secured Agreement*.  Jackson does not provide an alternative date upon which the unjust enrichment claim would run.  However, in his opposition to the *Cross-Motion*, Jackson argues the unjust enrichment claim as an alternative to his breach of contract claim and argues the two claims together.  Jackson is asserting that the unjust enrichment claim is not time-barred by the statute of limitations for the same reasons he contends that his

13

breach of contract claim would not have been time-barred. Accordingly, Jackson is contending that his unjust enrichment claim began to run sometime after his termination of the *Secured Agreement*, and the statute of limitations has been stayed by Jackson's Superior Court actions.

An unjust enrichment claim against Jackson would not run until after all the elements were met. Accordingly, the court must look at each element, and the date upon which each element was met. The first two elements, conferral of a benefit and the retention of that benefit, certainly occurred sometime around February 10, 2007. Whether possession of the Property was conveyed via a conditional conveyance or a completed conveyance, both parties agree that possession of the Property was conveyed to Cash on or around that date. Moreover, Cash has retained that benefit from that date. There is no evidence showing that Cash relinquished possession of the Property to Jackson at any time.

The issue is deciding when the retention became unjust. As noted before, Cash contends that the statute began to run from February 10, 2007, when the benefit was rendered. However, there is no indication that the retention of the Property on that date was unjust. It was anticipated that the *Secured Agreement* would last at least two years, meaning Cash may have had at least two years to perform under the *Secured Agreement*. Additionally, the District of Columbia Court of Appeals rejected the "last

rendition of services" test, and held that it was a question of fact when an unjust enrichment claim became unjust.

There are multiple dates in the record that would indicate the possibility of an unjust retention. It could be that retention became unjust after Cash failed to pay the $15,000 in a reasonable time period. It could be after the two-year mark when Cash failed to refinance the mortgage and transfer the insurance. It could be at the time that Jackson terminated the *Secured Agreement*, or it could be when Jackson demanded return of the Property and Cash refused. Accordingly, this would be a question of fact that normally could not be resolved via a motion for summary judgment. However, all the elements would have been met no later than November 12, 2012, when Jackson sent the letter to Cash cancelling the *Secured Agreement*. By this point, Cash had allegedly breached the *Secured Agreement* thereby justifying Jackson in cancelling the *Secured Agreement* and making the retention of the Property unjust.

November 12, 2012, is more than three years prior to the filing of this adversary proceeding on May 19, 2017, and more than three years before Cash filed her petition commencing the bankruptcy case on December 27, 2016. Therefore, the case is time-barred by the statute of limitations unless the statute was tolled. Jackson contends that the statute of limitations had been tolled by his Superior Court cases. However, the court

15

rejected this tolling argument in its *Memorandum Decision and Order re Defendant's Motion to Dismiss*, and for the same reasons stated therein, the court rejects that argument again here. Accordingly, Jackson's unjust enrichment claim insofar as it is based on the same acts as his breach of contract claim, is barred by the statute of limitations.

However, to the extent that Count IV extends to other theories of unjust enrichment, for example, a theory that Jackson continues to bestow a benefit on Cash by making mortgage payments that Cash is unjustly retaining, or a theory that Cash converted the Property by recording a forged deed, and to the extent that those theories cover acts occurring in the three years preceding the filing of the bankruptcy case, and thus subject to tolling

under 11 U.S.C. § 108(c),[5] such claims would still survive.[6]

The court holds that Jackson's unjust enrichment claim, insofar as it is based on the same acts as Jackson's breach of contract claim, is time-barred and must be dismissed, and the court will dismiss Count IV to that extent.  Moreover, Jackson's *Motion* seeking summary judgment on his unjust enrichment claim

---

[5] As relevant here, § 108(c) provides that if a statute of limitations had not expired before the date of the filing of the petition, then the statute of limitations would not expire:

until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 . . . with respect to such claim.

[6] The doctrine of continuing tort would not allow Jackson to claim actions that occurred earlier than three years before the petition date because the continuing tort doctrine is no longer appropriate after the plaintiff has discovered the injury. This doctrine is based on the principle that "no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm.'" *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984) (quoting *Fletcher v. Union Pac. R.R.*, 621 F.2d 902, 908 (8th Cir. 1980)).  However, "once the plaintiff has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate." *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 667 (D.C. 1997).  Jackson was put on notice of the injury of Cash's actions fairly early, and at least as late as November 12, 2012, when he sent the letter to cancel the *Secured Agreement*, as evidenced by his hiring Marty Wynn and his property management company, Phase 3 Network, Inc., to help him manage the Property, and his efforts to obtain rents or have Cash quit the property.

must be denied.  However, the court will not dismiss Count IV to
the extent that it applies to other claims of unjust enrichment.

IV

Cash's *Cross-Motion* requests a judgment finding that Jackson
has signed the *Deed*.  Jackson claims there is a dispute as to
whether he has signed the *Deed*.  Jackson alleges in his
opposition to Cash's *Cross-Motion* to not have signed the *Deed* in
the record.  However, this is a mere allegation that was not
supported by any evidence.  Not even Jackson's affidavit
supported this claim.  There was, on the other hand, sufficient
evidence to support that Jackson had signed the *Deed*,
specifically, a copy of the *Deed* had been provided by both Cash
and Jackson, and that copy of the *Deed* had what appeared to be
Jackson's signature.  Additionally, Jackson submitted two
affidavits testifying that he "agreed to convey the real property
to Defendant pursuant to a 'Special Warrenty Deed.' (sic)."
While Jackson's affidavits did not specifically say that Jackson
signed the *Deed*, they also did not support the proposition that
Jackson did not sign the *Deed*.  Furthermore, Jackson admits that
the property was conveyed by a deed, and this confusion, without
evidence, supports Cash's contention that the signed *Deed* is
binding.  A mere allegation is not sufficient to overcome an
established fact in a motion for summary judgment.  Accordingly,
this allegation, without more would not be sufficient to overcome

Cash's motion for summary judgment.

However, Federal Rule Civil Procedure 56(e) provides the court with four options should a party fail to properly support or address a fact including:

(1)   give an opportunity to properly support or address the fact;
(2)   consider the fact undisputed for purposes of the motion;
(3)   grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
(4)   issue any other appropriate order.

It is clear that Jackson is contending that the signature on the *Deed* is a forgery, and I deemed it appropriate to give Jackson the opportunity to submit an affidavit to support that contention. Accordingly, at the hearing of October 17, 2018, on Cash's *Cross-Motion*, I directed Jackson to file an affidavit supporting his allegation that the *Deed* is a forgery, failing which, the court would grant Cash's *Cross-Motion* for summary judgment. On October 22, 2018, Jackson filed an affidavit (Dkt. No.79) in which he denies that he signed the *Deed*. Accordingly, the court will deny the request in Cash's *Cross-Motion* for the court to declare that Jackson signed the *Deed*.

V

Cash also requests in her *Cross-Motion* a judgment denying Jackson equitable relief because Jackson has unclean hands. This request, however, must be denied. Cash's contention lies in the

19

fact that Jackson did not inform Cash of the change in the interest rate of the first mortgage, and that Jackson demanded Cash pay rent and quit the Property.  Jackson's actions of demanding rent and demanding that Cash quit the property may have been within his rights for Cash's alleged failure to perform under the *Secured Agreement*.  If a landlord-tenant relationship existed, Jackson argues that he was entitled to rent at a fair market value.  Rent at a fair market rate would not have depended upon the amount of mortgage payments Jackson owed.

Moreover, the *Secured Agreement* does not purport to impose on Jackson a duty to inform Cash of any changes in mortgage payments.  Of course, if Cash had performed under the *Secured Agreement*, she was not required to pay more than the amount of the mortgage payments Jackson owed.  However, the *Secured Agreement* does not purport to fix the amount of Cash's obligation to pay for occupancy of the Property if she defaulted under the *Secured Agreement* and Jackson became entitled to payment of rent for Cash's occupancy of the Property.  If Jackson and Cash were in a landlord-tenant relationship, then there was no duty on the part of Jackson to inform Cash that the mortgage payments on the first mortgage had decreased.

VI

For the aforesaid reasons, it is

ORDERED that Jackson's *Motion* (Dkt. No. 50), insofar as it

20

seeks summary judgment on Jackson's claim of breach of contract, is dismissed as moot.  It is further

ORDERED that Jackson's *Motion* (Dkt. No. 50) is otherwise DENIED.  It is further

ORDERED that the part of Cash's *Cross-Motion* (Dkt. No. 55) seeking summary judgment dismissing Jackson's unjust enrichment claim is GRANTED IN PART and a separate order will be entered that will dismiss Count IV with prejudice, as time-barred by the statute of limitations, to the extent it is based on the same acts as the claim for breach of contract, but that will deny Cash's *Cross-Motion* regarding unjust enrichment to the extent Count IV asserts claims of unjust enrichment on other grounds. It is further

ORDERED Cash's *Cross-Motion* insofar as it seeks summary judgment on Jackson's breach of contract claims is DISMISSED as moot.  It is further

ORDERED that Cash's *Cross-Motion* is otherwise DENIED.

[Signed and dated above.]

Copies to: Recipients of e-notifications of orders.