The document below is hereby signed.

Signed: March 31, 2021



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MICHELLE RUTH CASH, | ) | Case No. 16-00663 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL A JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 17-10018 |
| MICHELLE RUTH CASH, | ) | |
| | ) | Not for Publication in |
| Defendant. | ) | West's Bankruptcy Reporter. |

AMENDED SUPPLEMENTAL MEMORANDUM DECISION
AND ORDER RE DEFENDANT'S MOTION TO DISMISS
AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendant Cash filed a motion to dismiss (Dkt. No. 47)

under Fed. R. Civ. P. 12(b)(6). This decision supplements the

_Memorandum Decision and Order re Defendant's Motion to Dismiss_

(Dkt. No. 83),[1] in which I rejected Cash's estoppel arguments

---

[1] In light of changes to the decision regarding the _Motion to Dismiss_, this decision also revises the disposition of Cash's motion for partial summary judgment (Dkt. No. 55).

seeking dismissal of Counts I through V and Count VII of the *Third Amended Complaint*;[2] dismissed Count VI insofar as it asserted a breach of contract claim; ordered the parties to submit briefs on whether the court ought to dismiss Count VI as to the equitable remedy of a vendor's lien; and ordered Jackson to assert any other equitable remedies he wished to pursue under Count VI.  Specifically, the court directed that:

> the parties shall file briefs regarding whether the court should dismiss Count VI as to the equitable remedy of a vendor's lien, that is, whether Jackson may  assert the equitable remedy of a vendor's lien under Count VI, with those briefs to address, in addition to any other issues the parties wish to bring to the court's attention, the following issues:
>
> > 1. any challenges as to whether the remedy would apply in this case;
> >
> > 2. any cap on the debt that Jackson could recover under a vendor's lien, *e.g.*, whether Jackson could not claim consequential damages because the seller takes the risk of non-payment's consequential effects; and
> >
> > 3. how to address the defendant's, Michelle Ruth Cash's, alleged breach of failing to refinance the existing mortgage, *e.g.*, whether a vendor's lien includes the amount necessary to pay off the existing mortgage.

The parties have filed their briefs.  Jackson's brief (Dkt. No. 80) seems to assert that he has a purchase money mortgage on the

---

[2]  However, via a summary judgment ruling (Dkt. Nos. 85 and 86), Count IV, asserting an unjust enrichment claim, was dismissed as time-barred by the statute of limitations, to the extent it is based on the same acts as the claim for breach of contract, but was not dismissed the extent Count IV asserts claims of unjust enrichment on other grounds.

Property, but he has not otherwise asserted any equitable remedies beyond a vendor's lien.[3]  For the following reasons, I will alter the dismissal of the breach of contract claims in Count VI by identifying certain claims that are not time-barred; I will dismiss Count VI as to all equitable claims, except the equitable claim of a vendor's lien; and I will deny any request to assert a purchase money mortgage as an equitable remedy.

I

The facts of this case have been reviewed in the court's previous *Memorandum Decision and Order re Defendant's Motion to Dismiss* (Dkt. No. 83), and will not be repeated in depth here.

Cash contends that Jackson may not assert a vendor's lien because Cash is not in default of the Secured Agreement, because the three-year statute of limitations bars the imposition of a vendor's lien, and because Jackson has unclean hands.  Cash also contends in the alternative that if the court does grant a vendor's lien, such lien should only extend to the amount of the outstanding mortgage and that the vendor's lien should be reduced to the extent that Ms. Cash continues to pay the first mortgage loan secured by the Property.  Each of these contentions will be addressed below.

---

[3]  All terms have the same meaning as in the *Memorandum Decision and Order re Defendant's Motion to Dismiss* (Dkt. No. 83).

A.   Default on the Secured Agreement

The Property was subject to a first mortgage and a second mortgage when the parties executed the Secured Agreement.  Under the Secured Agreement, Cash, as the "Sole Owner" of the Property, was responsible, starting as of February 2007, for making payments of both mortgages.  The Secured Agreement further provided that "[Cash] will refinance the mortgage from EMC Mortgage Corporation after two years or until [Cash] is able due to lender's approval and settling on the property."  However, in seeking summary judgment, Cash has indicated that it is undisputed that the refinancing obligation applied to both the first and the second mortgages on the Property.  (Dkt. No. 55 at 4.)  The second mortgage has been satisfied, but the first mortgage remains unsatisfied.  Cash was further required to pay $15,000 to Jackson.

*The Nature of a Vendor's Lien*.  The *Third Amended Complaint* seeks a declaratory judgment as to the parties' rights, and Jackson would be entitled to a declaration of what rights he has based on the remedy of a vendor's lien.  A vendor's lien is a remedy imposed by courts of equity where the purchase price for real property has not been paid and is unsecured.  *Kosters v. Hoover*, 98 F.2d 595, 596 (D.C. Cir. 1938).  Cash asserts that she is not in default of her obligations, and thus there is no need for a vendor's lien.  Obviously, if the buyer has remained

4

current on her payment obligations, the vendor's lien is not yet
enforceable, but that does not mean that the vendor's lien is not
in place, only that it is not yet enforceable.  On the other
hand, a vendor's lien does not permit the seller to retake title
to the property, *Pleasants v. Fay*, 13 App. D.C. 237, 245 (D.C.
1898), and, accordingly, title remains in Cash until the vendor's
lien is enforceable and is enforced "by a sale of the property to
which it is attached."  *Id.*  *See also* D.C. Code § 42-816 ("And in
suits to enforce a vendor's lien on real estate for unpaid
purchase money similar relief may be given by a decree of sale
and a decree in personam for the unsatisfied residue of the
purchase money due.").

   *Cash's Argument that a Vendor's Lien is not a Needed Remedy
in Light of the Existing First Mortgage*.  Cash argues that she is
not in default and that her continuing obligations under the
Security Agreement are effectively secured by the first mortgage
which secures payment of the mortgage debt currently remaining.
In other words, Cash argues, there is no default which requires a
remedy, as there is already a lien on the property which secures
payment of the balance of the debt owed by Jackson, which Cash
agreed to pay.

   The law requires that the vendor's lien remain in place.
The Security Agreement requires Cash to make each monthly payment
on the mortgages, with Cash's payment of a monthly mortgage

payment due relieving Jackson of the obligation to make those payments, and requires Cash to refinance when she is able to refinance.  For example, if Cash fails to make a monthly payment on the first mortgage, Jackson's vendor's lien would entitle him to obtain a sale of the Property to provide him with funds to make the missed payment on the first mortgage on which he presumably remains personally liable (and will remain personally liable even if the Property is sold in a vendor's lien sale to a third party instead of being sold to Jackson).  Accordingly, the continued existence of the first mortgage on the Property does not negate Jackson's entitlement to a vendor's lien to protect himself.  Similarly, if Cash is able to refinance the first mortgage but has failed to refinance, Cash is in default under the Security Agreement (which contemplated that Cash would fully pay off the first mortgage via a refinancing once able to do so).  In that case, the vendor's lien would be available to enforce that refinancing obligation (via a judicial sale that would require as a term of sale that the proceeds be used first towards paying off the first mortgage).

*Whether Jackson Executed the Deed to the Property*.  Jackson asserts that he did not sign the Deed to the Property, and it is void because it is a forgery.  That is a factual issue, and it would not moot the necessity of determining whether Cash is in default under the Security Agreement.  If the Deed is *not* a

forgery, the issue of a vendor's lien would be in play.  If the
Deed *is* a forgery, then Cash has no ownership of the Property
against which Jackson is entitled to enforce a vendor's lien.  In
that event, however, Cash might seek an order compelling Jackson
to convey the Property to her because the Secured Agreement
contemplated that beginning February 1, 2007, Cash, "as Sole
Owner" was to assume the monthly mortgage payments.  Jackson
might be entitled to defend against the entry of such an order if
Cash is in default of her obligations under the Security
Agreement.  In any event, upon the entry of such an order and
Jackson's conveying title, the issue of a vendor's lien would
arise, with Jackson entitled to seek a judicial sale if a default
has occurred or were to occur.  Accordingly, I turn to the issue
of whether Cash is in default.

   *The $15,000 Obligation*.  In seeking partial summary
judgment, Cash recited material facts not in genuine dispute (and
that Jackson failed to challenge as required by LBR 7056-1)
establishing that Cash paid more than the $15,000.00 owed under
the Secured Agreement because:

- starting in May 2011 and through December 2012 she made
  payments to Jackson to cover the first mortgage's
  monthly payments based on the original mortgage
  interest rate when, unbeknownst to her, the interest
  rate on the first mortgage had dropped, with Jackson

pocketing the difference between the monthly mortgage payment and the amount Cash paid to Jackson each month;

- Cash's payments to Jackson for making monthly mortgage payments, and providing cash to Jackson in excess of what he needed to make the monthly first mortgage payments, resulted in Cash paying Jackson well in excess of $15,000.00 more than was needed in the period of May 2011 through December 2012 to pay the monthly payments due on the first mortgage.

The court calculated that Cash made payments to Jackson for making first mortgage monthly payments that were roughly $26,100 more than was necessary for the purpose of making those monthly payments. See *Memorandum Decision and Order re Plaintiff's Motion for Partial Summary Judgment and Defendant's Cross-Motion for Partial Summary Judgment* (Dkt. No. 85) at 6 n.1.[4]  The court dismissed the breach of contract claim as time-barred, but, as to the merits of whether Cash satisfied the monetary obligation to pay Jackson $15,000, an obligation that is secured by any vendor's lien, it is evident that Cash's obligation to pay $15,000.00 had been satisfied as of December 2012 by reason of her paying roughly $26,100 more than was owed on the first mortgage's monthly payments.

---

[4]  In addition, Jackson neglected to send the required payments to the first mortgagee in a timely fashion, causing late charges to accrue.

*The Obligation to Make Monthly Payments on the Second Mortgage and to Refinance that Obligation.*  Cash was required to make the monthly payments on the second mortgage and to eventually refinance the second mortgage.  However, the parties are in agreement that:

- The second mortgage was paid off as of October 31, 2013, pursuant to an agreement Jackson reached with the second mortgagee that called for six monthly payments of $1,462.75 each beginning March 31, 2013, and ending August 30, 2013, and totaling $8,776.50, which the mortgagee agreed would relieve Jackson of any liability for the amount of the mortgage debt.

- On October 31, 2013, the mortgagee confirmed that the mortgage debt had been satisfied.[5]

Cash appears to concede that it was Jackson who made the $8,776.50 in payments, as she was kept in the dark regarding the

---

[5]   See Cash's Counterclaim (part of Dkt. No. 48), alleging at ¶ 54 (a paragraph admitted by Jackson) that there are attached accurate copies of Jackson's agreement with the second mortgagee and the second mortgagee's letter of October 31, 2013, acknowledging that the debt had been satisfied.  The second mortgage debt stood at more than the $8,776.50 but the second mortgagee forgave the balance of the debt, and Jackson had no remaining obligation, secured or unsecured, to pay that forgiven balance.

details of the transaction.[6]  I will assume for present purposes that, as pled by the *Third Amended Complaint*, it is Jackson who paid off the second mortgage in 2013.

If Jackson made the $8,776.50 in payments, this would mean that he relieved Cash of an obligation to pay the same sum via monthly second mortgage payments, and he would be entitled to be reimbursed that $8,776.50.[7]  The exact amount by which Cash overpaid Jackson for making payments on the first mortgage has not been fixed, but it is roughly in the amount of $26,100.  Part of that $26,100.00 satisfied Cash's obligation to pay Jackson $15,000, and excess funds were left to apply to credit towards the missed second mortgage payments:

- If Jackson was entitled to receive interest on the $15,000 by reason of the four-year (or longer) delay in

---

[6]  Cash alleges at ¶ 55 of her Counterclaim that "Mr. Jackson did not notify Debtor that he had satisfied Mortgage 2 through this settlement process with Real Time Resolutions." Similarly, it appears that in an affidavit filed in the Superior Court, Cash asserted that "Jackson mentioned to me that he was working on a pay-off of the entirety of the second mortgage with Realtime Resolutions, but later neglected to give any information regarding the payoff transaction."  See Exhibit H to Cash's Counterclaim at ¶ 6.

[7]  The monthly second mortgage payments were $1,050.27 per month.  However, Jackson's agreement with the second mortgagee permitted him to satisfy the second mortgage via six monthly payments of $1,462.75 beginning April 30, 2013.  But for the agreement, those payments would have still left $78,987.80 owing (see Cash's Counterclaim, Ex. H), and Cash would have had a continuing obligation to pay $1,050.27 per month for many more months.

paying the $15,000,[8] insufficient excess funds would
have been left to fully satisfy Cash's debt for
reimbursing Jackson for his $8,776.50 of payments on
the second mortgage.[9]

- If Jackson was *not* entitled to receive interest by
reason of the delay in paying the $15,000, the excess
payments left after satisfaction of the $15,000
obligation would have been $11,100, an amount
sufficient to satisfy Cash's debt for reimbursing
Jackson for his $8,776.50 of payments on the second
mortgage.

Accordingly, Cash may or may not have effectively satisfied her
obligation to reimburse Jackson for his $8,776.50 of payments on
the second mortgage.

If Cash effectively reimbursed Jackson for the $8,776.50 in
payments on the second mortgage, she also effectively satisfied

---

[8]   D.C. Code § 28-3302(a) provides a rate of 6% per annum
upon the loan or forbearance of money, goods, or things in action
in the absence of expressed contract.  The parties have not
addressed whether Jackson is entitled to such interest.

[9]   Cash might have been entitled to interest on the part of
her overpayments of roughly $26,100 to Jackson that are not
treated as satisfying the $15,000 obligation.  Those overpayments
occurred during the period of May 2011 through December 2012.
Interest accruals thereon would not have sufficed to increase the
funds remaining after satisfaction of the $15,000 obligation to
an amount sufficient to fully satisfy the obligation to reimburse
Jackson for the $8,776.50 payments he made in 2013 on the second
mortgage.

her obligation to refinance the second mortgage: she would be
viewed as the source of sufficient funds to make the $8,776.50 in
payments made to satisfy the second mortgage as of October 31,
2013.  That would amount to Cash's self-refinancing the second
mortgage by providing the necessary funds to satisfy the second
mortgage.

*The Obligation to Pay the Monthly Payments on the First
Mortgage*.  Cash asserts that she has paid, and she is continuing
to pay, the full amount of all of her obligations that are
*currently* due under the Secured Agreement.  However, the *Third
Amended Complaint*, at ¶ 42 alleges: "Defendant Cash has not made
a payment on the first mortgage to Plaintiff or to Specialized
Loan Servicing LLC ("SLS"), the current servicer for JP Morgan
Chase, since December of 2016."  Moreover, Jackson's January 11,
2018 answers to interrogatories (Exhibit D to Dkt. No. 55) reveal
that he made three payments of $1,990.97 each on the first
mortgage in June and July 2017.[10]  There is thus a factual
dispute as to whether Cash defaulted in making monthly payments
on the first mortgage.

As stated above, I have calculated that Cash made $26,100
excess payments to Jackson in the period of May 2011 to December

---

[10]   If Jackson made other payments after January 3, 2018, he
has not sought to supplement the *Third Amended Complaint*, filed
on January 3, 2018, to allege any default by Cash in making
monthly payments after January 3, 2018.

2012.  Even assuming that Jackson was not entitled to interest on the delayed payment of the $15,000, treating that $26,100 as:

- satisfying the $15,000 payment due to Cash under the Security Agreement, and

- satisfying the obligation to reimburse Jackson for $8,776.50 of payments on the second mortgage,

that would not leave sufficient excess funds to fully satisfy the three mortgage payments of $1,990.97 each (totaling $5,792.91) that Jackson states that he paid in June and July 2017. Accordingly, there would have been a default in making first mortgage payments for which Jackson would be entitled to enforce his vendor's lien (if Jackson is correct that Cash did not make the three payments of $1,990.97 each).  Moreover, it is possible that there were other monthly first mortgage payments after December 2016 that neither Cash not Jackson paid, consistent with the *Third Amended Complaint*'s allegation that Cash did not make payments on the first mortgage after December 2016.

*Whether Cash Had an Obligation to Refinance Within a Reasonable Time*.  Jackson appears to argue that the Secured Agreement had an implied requirement that Cash refinance the mortgages within a reasonable time.  He does so by pointing to the passage of years since the Security Agreement was executed. However, the Security Agreement was clear that Cash was only required to refinance when she was able to refinance.  In the

13

meantime, until Cash was able to refinance, Jackson was protected by Cash's obligation to make monthly mortgage payments.  The only relevant remedy would be the remedy of a vendor's lien.  As discussed earlier, a breach of Cash's obligation to refinance once able to refinance might entitle Jackson to employ the vendor's lien.  However, I fail to see why Jackson ought to be entitled to enforce the vendor's lien based Cash's failure to refinance if Cash has been unable to refinance.

The *Factual Issue of Whether Cash was Able to Refinance the First Mortgage*.  Cash asserts that she has been unable so far to refinance the first mortgage, and that, therefore, she is not in breach of the obligation to refinance the second mortgage once able to do so.  Whether Cash has been unable to refinance the first mortgage is a factual issue.

*Issue of Late Payments*.  There also remains an issue of whether Cash made late payments, and whether making late payments created a default under the Secured Agreement.  Nevertheless, if there were late payments, such that there was a default, but Cash later paid off any fees for late payments, and the first mortgage is current, then she cured any default, and there is no basis for enforcing a vendor's lien: Jackson has not shown how enforcement of his vendor's lien would be appropriate when what the vendor's lien secures is Jackson's receiving the benefit of Cash paying

14

the mortgages (which would not be in default if Cash had brought
the mortgages current).

B.    Statute of Limitations

Cash contends that a three-year statute of limitations would
apply to a vendor's lien because a vendor's lien goes toward
recovering the debt, not the property, and, accordingly, a
vendor's lien is not a recovery of land under D.C. Code § 12-
301(1) for which there is a 15-year statute of limitations.[11]
Cash is correct that a vendor's lien attaches to secure payment
of a debt, and is not expressed as a right to recover land.
However, Cash is incorrect that the three-year statute of
limitations applicable to suing on a contractual debt applies to
enforcing a vendor's lien.  Cash's argument, if correct, would
apply as well to the enforcement of a mortgage or a deed of
trust, but the argument is readily rejected in the case of a
mortgage or a deed of trust.

---

[11]   D.C. Code § 12-301 provides limitations periods for
bringing various types of actions, including:

        (1) for the recovery of lands, tenements, or
hereditaments -- 15 years;
        . . .
        (7) on a simple contract, express or implied -- 3
years;
        (8) for which a limitation is not otherwise specially
prescribed -- 3 years;
        . . .

As held in *Sis v. Boarman*, 11 App. D.C. 116, 121–22 (D.C. Cir. 1897), the statute of limitations on enforcing a mortgage or a deed of trust on real property is governed by the statute of limitations applicable to possessory actions at common law for the recovery of real estate. *See also Davis v. Stone*, 236 F. Supp. 553, 557 (D.D.C 1964) (noting that the limitation period then in force, as now, for an action to recover real property is fifteen years).

Necessarily, the principle applies as well to enforcement of a vendor's lien.  In *Peters v. Suter*, 9 D.C. (2 MacArth.) 516, 518 (D.C. 1876), the court held that the statute of limitations for suing on a debt did "not apply to suits in chancery for the recovery of money secured by a mortgage, or **equitable lien** on real estate, or to mortgages in any way or of any description." (Emphasis added; citations omitted.)  Noting that this principle has been applied in "cases to enforce the payment of money secured by a vendor's lien" as well as actions to enforce a mortgage or a deed of trust, the *Peters* court explained that "[t]he lien affects the title to land, and is therefore of the same importance and consideration as other deeds, and [courts] grant relief in equity for the same length of time that a right of entry is preserved."  A vendor's lien, by its nature, arguably even more strongly than a mortgage or deed of trust, entails a right of entry, for a vendor's lien is based on the principle

16

that "[w]hen one person has got the estate of another, he ought not, in conscience, to be allowed to keep it without paying the consideration." *Braiden's Adm'x*, 67 U.S. 458, 460 (1862).

Maryland cases hold that the statute of limitations for a vendor's lien is the same as for a right of ejectment.[12] *See e.g. Baltimore and Ohio R.R. Co. v. Trimble*, 51 Md. 99, 112 (1879) (holding that the court would "put[] a vendor's lien, so far as the applicability of limitations is concerned, upon the same ground with a lien by mortgage").[13]

Accordingly, in the District of Columbia, a vendor's lien enjoys the same statute of limitations as recovery in land causes of action.  It has not been 15 years since Jackson's cause of

---

[12] This court may appropriately look to Maryland law because "the common law of the District of Columbia encompasses all common law in force in Maryland in 1801, unless expressly repealed or modified." *United States v. Jackson*, 528 A.2d 1211, 1215 (D.C. 1987); *see also* D.C. Code § 45-401(a).  "Maryland authorities expounding the common law of that state constitute powerful precedent in this jurisdiction . . . ." *Little v. United States*, 709 A.2d 708, 711 (D.C. 1998).

[13] The court in *Trimble* noted that mortgages are a deed of conveyance, "the rights under which are not barred except by the lapse of twenty years, by analogy to the time of limitations under the Statute of James, which saves the right of entry for that period." *Id.*  Maryland cases go so far as to say that there was no statute of limitations on mortgages and vendor's lien in Maryland, but only a rebuttable presumption that after 20 years, the mortgage or vendor's lien had been satisfied. *Cunnigham v. Davidoff*, 53 A.2d 777, 781 (Md. 1947).  Whether, in contrast, District of Columbia courts strictly enforce the 15-year statute of limitations of D.C. Code § 12-301(1) for recovery of land to enforcement of a mortgage or vendor's lien is a question I need not address.

action arose.   Therefore, the right to recover under the theory

of a vendor's lien is not barred by the statute of limitations.[14]

C.   Unclean Hands

Cash asserts that the court should not grant a vendor's lien

because Jackson does not have clean hands.   Cash asserts that

Jackson thwarted Cash's attempts to refinance the property by

refusing to provide the relevant loan information.   This is again

an issue of fact that cannot be decided on a motion to dismiss.

D.   Limiting the Vendor's Lien to Only the Amount of the
     Outstanding Mortgage

Cash asserts that if the court imposes a vendor's lien, it

should be fashioned to extend only to the amount of the

outstanding mortgage.   The basis of a vendor's lien is "that a

person, who has gotten the estate of another, ought not, in

conscience, as between them, to be allowed to keep it, and not to

pay the full consideration money."   *Pleasants v. Fay*, 13 App.

D.C. 237, 243 (1898).   The remedy should only extend as far as

---

[14]   Even if an action to enforce Jackson's vendor's lien
were barred by the statute of limitations, Cash would not be
allowed to use the statute of limitations to clear the vendor's
lien from the Property.   The statute of limitations may not be
used to clear title of property from a mortgage or deed of trust.
*See Talbot v. Hill*, 261 F. 244, 246 (D.C. 1919) (recognizing that
the statute of limitations bars a remedy, but does not cancel the
debt).   Logically, this same rule applies to a vendor's lien, and
*Hall v. District of Columbia*, 47 App. D.C. 552, 557-58 (D.C. App.
1918), cited favorably *Cassell v. Lowry*, 72 N.E. 640 (Ind. 1904),
which held that title of land could not be cleared of a vendor's
lien, even where any action to enforce the vendor's lien was
barred by the statute of limitations.   *See also Talbot*, 261 F. at
246 (also citing *Cassell*).

the purchase money that has not been paid. *Id.* at 244. As held in *In re Paradise Homes, Inc.*, No. 0-60389, 2008 WL 619330, at *3 (Bankr. S.D. Ill. March 5, 2008), "a vendor's lien is *not* an interest or estate in realty, but, rather, is merely a remedy for the debt." Cash is thus correct that Jackson should not enjoy a windfall from any recovery on the vendor's lien, but may only recover the remaining debt that was secured by the vendor's lien.

To determine the extent of the vendor's lien would require findings of fact, particularly with respect to the effect of Jackson's allegations regarding Cash having an obligation to reimburse Jackson for his $8,776.50 of second mortgage payments. Therefore, the court cannot at this time hold that the vendor's lien would only extend to what remains on the first mortgage.

It is not possible on the current record to determine whether Jackson would succeed on a claim to enforce a vendor's lien, but no reason has been presented to bar him from asserting the claim and presenting any evidence in support of the vendor's lien remedy he may have. Therefore, there is no reason to dismiss Count VI to the extent it is a claim for a vendor's lien.

II

Jackson discusses purchase money mortgages in his *Plaintiff Micheal's* [sic] *Jackson Memorandum-Brief on Vendor's Lien*, citing *Williams v. Dudley Trust Foundation*, 675 A.2d 45 (D.C. 1996). However, *Dudley Trust* did not involve a purchase money mortgage,

but involved instead an installment land contract that called for title to pass only once installment payments had been completed. As the Court of Appeals explained:

> While the purchaser under such a contract is entitled to immediate possession of the property, title is retained by the seller, usually until the full purchase price has been paid.  The purchase price is paid in installments. The purchaser usually assumes responsibility for property upkeep, payment of taxes and insurance.  Typically such contracts contain a forfeiture or default provision under which the seller may regain possession of the property and keep all monies paid to the date of default.

675 A.2d at 51.  Here, the Security Agreement was not cast as an installment land contract with any of the features of the contract in *Dudley Trust*.[15]

Nor was the Security Agreement cast as a purchase money mortgage.  Moreover, the existence of a mortgage would undermine a claim for a vendor's lien because a vendor's lien is a remedy imposed by courts of equity where the purchase price for real property has not been paid and is *unsecured*.  *Kosters v. Hoover*, 98 F.2d 595, 597 (D.C. Cir. 1938) (observing that "it is the fact that the purchase price is unpaid and unsecured which creates the

---

[15]  The contract in *Dudley Trust* provided that if the buyer defaulted "on any term of [the] agreement" the seller had the right to terminate the contract and keep "all down payments and all other payments made prior to the default."  675 A.2d at 47. The contract further provided that "at the election of the Seller," the buyer was required to "execute a renunciation of any interest he shall have in the property" in the event of his default.  *Id.*  The Court of Appeals characterized the buyer as having entered into "a highly risky installment land contract . . . ."  675 A.2d at 55.

lien"). Cash did not give Jackson a mortgage, or security
interest in the Property, of any kind. Instead, a vendor's lien
has arisen as an equitable remedy.

III

In light of the discussion above, I have determined that
three prior rulings need to be modified.

First, the court previously dismissed the breach of contract
claim as time-barred by the three-year statute of limitations
(Dkt. No. 83 at 21-29), and viewed only the vendor's lien remedy
as still in play. However, that ruling focused on only two
breach of contract claims: the claim relating to the failure to
pay the $15,000 obligation, and the claim relating to the failure
to refinance by February 1, 2009. The court failed to note that
Count VI incorporated the earlier allegation of ¶ 42 of the *Third
Amended Complaint* alleging that Cash has not made a payment on
the first mortgage since December 2016. A breach of contract
claim based on the failure to make those payments would not be
barred by the three-year statute of limitations. In addition, if
Cash first became able to refinance on a date within three years
prior to the commencement of the adversary proceeding on May 19,
2017, or after that date, a claim based on her breach of the
obligation to refinance would not be barred by the statute of
limitations. Accordingly, I will direct that Count VI remains
pending as to any breach of contract claim that arose from a

21

failure to make a monthly first mortgage payment that came due after December 2016, and any contract claim that arose from any failure to refinance occurring after Cash first was able to refinance on a date on or after May 19, 2014.

Second, the court dismissed Cash's motion for partial summary judgment seeking dismissal of Count VI as mooted by the dismissal under Rule 12(b)(6) of Count VI with respect to breach of contract claims. See Dkt. No. 85. In light of the foregoing revision of the ruling on the motion to dismiss, some breach of contract claims remain and the motion for partial summary judgment was *not* moot. Accordingly, Cash's motion for partial summary judgment ought not have been dismissed as moot. For the following reasons, Cash's motion for partial summary judgment ought to be denied instead. There was the failure to make three payments of $1,990.97 each on the first mortgage in June and July 2017, and a claim regarding that failure would not have been barred by the three-year statute of limitations. In addition, although Jackson's answers to interrogatories failed to identify any other payments he had made, the *Third Amended Complaint* alleges that after December 31, 2016, Cash failed to make payments on the first mortgage. Cash's motion for summary judgment does not establish that she made the first mortgage monthly payments after December 31, 2016, only that Jackson has not shown that *he* made any of those payments (other than the

22

three payments of $1,990.97 each).  In other words, there may be
monthly first mortgage payments that came due after December 2016
that neither Cash not Jackson paid.  That too requires denial of
Cash's motion for partial summary judgment.

Third, by way of summary judgment, the court ordered (Dkt.
No. 86) that "Count IV of the plaintiff's *Third Amended Complaint
to Recover Fraudulently Acquired Property*, insofar as
it is based on the same acts as the plaintiff's breach of
contract claim, is dismissed with prejudice as time-barred by the
statute of limitations."  To the extent that the breach of
contract claims are to remain pending as to certain acts, I will
direct that Count IV will remain pending as to the same acts.

IV

For all these reasons, it is

ORDERED that to the extent that Jackson is requesting to
assert a claim of a purchase money mortgage as an equitable
remedy under Count VI of the complaint, that request is DENIED.
It is further

ORDERED that with respect to Cash's *Motion to Dismiss* (Dkt.
No. 47), Count VI is dismissed with prejudice as to any equitable
claims except that it is not dismissed with respect to its
implicit assertion of a vendor's lien claim.  It is further

ORDERED that the prior dismissal of Count VI in Dkt. No. 85
with respect to breach of contract claims is revised to provide

that Count VI is not dismissed with respect to any breach of
contract claim that arose from:

- a failure to make a payment of a monthly mortgage
  payment that came due after December 2016; or
- a failure to refinance occurring after Cash first was
  able to refinance on a date on or after May 19, 2014.

It is further

ORDERED that the court's prior order (Dkt. No. 86) regarding
Count IV is revised to provide that Count IV of the plaintiff's
*Third Amended Complaint* is dismissed with prejudice as
time-barred by the statute of limitations except for those unjust
enrichment claims relating to acts for which the breach of
contract claims in Count VI are not time-barred.  It is further

ORDERED that the court's prior order (Dkt. No. 85)
dismissing Cash's motion for partial summary judgment (Dkt. No.
55) as to Count VI as moot is revised to provide that Cash's
motion for partial summary judgment as to Count VI is denied
instead of being dismissed as moot.

                              [Signed and dated above.]

Copies to: Recipients of e-notification of orders.