The order below is hereby signed.

Signed: February 14 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br>    Michelle Ruth Cash,<br>        Debtor. | Case No. 16-00663-ELG<br><br>Chapter 11 |
| Michael A. Jackson (deceased),<br>        Plaintiff/Counter-Claim Defendant,<br><br>v.<br><br>Michelle Ruth Cash,<br>        Defendant/Counterclaimant. | Adv. Pro. No. 17-10018-ELG |

## MEMORANDUM OPINION

Before the Court are the remaining claims in the almost decade long saga between Plaintiff/Counter-Claim Defendant Michael A. Jackson ("Mr. Jackson") and Defendant/Counter-Claim Plaintiff Michelle R. Cash ("Ms. Cash") regarding the ownership of real property located in the District of Columbia. Ultimately, the Court held trial (the "Trial") on the six remaining counts (as discussed more fully herein) on August 29, 2023. By the time this matter went to Trial, Mr. Jackson had passed away and no estate or other representative appeared to pursue the claims, though Mr. Jackson's former counsel appeared and observed the proceedings.[1] Thus, Trial was

---

[1] Mr. Jackson's former counsel represented that to his knowledge there was no probate estate, and no one had further retained him in these proceedings.

1

only able to go forward on Ms. Cash's remaining claims, the claims of Mr. Jackson having been dismissed pursuant to Federal Rule of Bankruptcy Procedure 7025(a)(1).[2] For the reasons stated herein, the Court finds for Ms. Cash on Counterclaims I and II and quiets title to the Property in her name and orders that the Lis Pendens (as defined herein) filed by Mr. Jackson be stricken from the land records. The Court further finds that Ms. Cash has not met her burden to recover on Counterclaims III, IV, and VI and denies judgment on each. Finally, because the Court finds in Ms. Cash's favor on Counterclaims I and II, Counterclaim V (pled in the alternative) is moot.

## I. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(C) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.[3]

## II. Background

*a.   The Security Agreement and Early Payments.*

This case centers around real property at 1235 Irving Street, NE, Washington, D.C. 20017 (the "Property") purchased in 2006 by Mr. Jackson, in part, through two mortgages (the "Mortgages," and each individually a "Mortgage") originated by WestStar Mortgage, Inc. ("WestStar") in the original principal amounts of $464,000 and $116,000. The WestStar Mortgages were later transferred to EMC Mortgage, LLC.

In either late 2006 or early 2007, Mr. Jackson approached Ms. Cash regarding the Property. On February 10, 2007, Mr. Jackson and Ms. Cash executed a Security Agreement (the "2007

---

[2] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."
[3] *See* Fed. R. Bankr. P. 7052.

2

Agreement") and "Special Warranty [*sic*] Deed" (the "Cash Deed") in which Mr. Jackson deeded the Property to Ms. Cash for (i) a $15,000 payment; (ii) assumption by Ms. Cash of monthly mortgage payments on the first mortgage; and (iii) an agreement by Ms. Cash to refinance the property after two years or "until [Ms. Cash] is able due to lender's approval and settling on the property."[4] Despite the 2007 Agreement's execution in 2007, the Cash Deed was not recorded until September 2015.[5] At all times between February 10, 2007 and September 2015, Mr. Jackson remained the titled owner of the Property.

After entry into the 2007 Agreement, Ms. Cash took possession of the Property, whereupon she began operating an assisted living facility in 2007. At this time, Ms. Cash made monthly mortgage payments on the Mortgages to the lender, and paid the ongoing taxes, utilities, and maintenance costs. During this period Ms. Cash attempted to refinance the Mortgages, but was unable to qualify for a loan, which resulted in Mr. Jackson's name remaining on the loans. Ms. Cash continued to have issues qualifying for financing on the Property. On May 1, 2011, the parties entered into an agreement (the "2011 Agreement")[6] whereby Ms. Cash remitted to Mr. Jackson's personal account an amount equal to six months of payments on the Mortgages (the "2011 Payment") in order for Mr. Jackson to apply for a modification of the Mortgages to pay off the second Mortgage and lower the first Mortgage payment.

On November 12, 2012, Mr. Jackson sent Ms. Cash a letter (the "2012 Letter") seeking to

---

[4] Ex. B, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Aug. 14, 2023), ECF No. 151–2. In earlier points during this and preceding litigation, there was a significant question of fact raised as to validity of the 2007 Agreement and Cash Deed, including whether Mr. Jackson actually signed the documents, and if so, whether the signature occurred at a Red Lobster restaurant. Mem. Decision and Order Re: Def.'s Mot. Dismiss at 4, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Oct. 29, 2018), ECF No. 83. However, the only evidence at trial was the uncontroverted testimony of Ms. Cash and the written documents in support of Ms. Cash's testimony. The Court acknowledges that Ms. Cash's testimony is biased in her favor. However, based upon the totality of the evidence presented, the Court finds her testimony as to the authenticity of the documents sufficiently credible in light of the accompanying documents.
[5] *Id.*
[6] Ex. E, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Aug. 14, 2023), ECF No. 151-5.

3

unilaterally cancel the 2007 and 2011 Agreements and modify the underlying nature of the relationship between the parties to that of landlord-tenant on the Property.[7] The 2012 Letter introduced, for the first time, a property management company—Phase 3 Network, Inc. ("Phase 3").[8] One month later, on December 6 and 29, 2012, Phase 3 sent two letters to Ms. Cash notifying her of "new management" on the Property and instructing Ms. Cash to direct all "rental" payments to their address for her "rental" of the Property.[9] On March 7, 2013, Mr. Jackson sent Ms. Cash a 30-Day Notice to Correct or Vacate that gave Ms. Cash until April 11, 2013 to pay $11,052.25 in alleged overdue "rent" and late fees or vacate the Property.[10] Ms. Cash did not pay the alleged "rent" due or vacate the Property.

At all times through early 2013, except for the 2011 Payment, Ms. Cash made payments in the amount that she thought was the actual amount of the two monthly mortgage payments—$2,969.37 and $1,050.27, for a total of $4,019.64. Mr. Jackson never provided Ms. Cash with copies of statements or any other verification of the mortgage amounts. In early 2013, Ms. Cash discovered that due to interest rate reductions in May 2011 and suspension of payment obligations (as discussed below), the payments on both Mortgages dropped to a total of $1,556.76. Mr. Jackson did not notify Ms. Cash of this change and she continued to make the higher payments through at least February 2013. Around the same time, Ms. Cash learned that Mr. Jackson was in negotiations with Real Time Mortgage (a workout specialist for the servicer at the time for the Mortgages) for a reduced payoff on the second Mortgage. Furthermore, Ms. Cash discovered that during those negotiations Mr. Jackson's payment obligations on the second Mortgage were excused. Ms. Cash then stopped making payments to Mr. Jackson towards either of the Mortgages.

---

[7] Ex. F, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Aug. 14, 2023), ECF No. 151-6.
[8] *Id.*
[9] Ex. G, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Aug. 14, 2023), ECF No. 151-7.
[10] Exs. J, K, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Aug. 14, 2023), ECF Nos. 151-10 to 11.

The second Mortgage was satisfied in October 2013 because of the negotiations with Real Time Mortgage.[11] As a result, at the end of February 2013, Ms. Cash reduced the amount of her monthly payments to $1,556.76 (the amount of the reduced, remaining Mortgage payment). Shortly after this reduction, litigation began between Ms. Cash and Mr. Jackson.

    b.     *Superior Court Litigation*

On April 12, 2013, Mr. Jackson filed an action in the Landlord and Tenant Branch of the Civil Division of the Superior Court for the District of Columbia (the "Superior Court") seeking to recover the difference in "rent" from Ms. Cash between the $4,019 (total of both Mortgages) and the $1,556.76 (first Mortgage payment) Ms. Cash made beginning in February 2013 ("Jackson I").[12] Ms. Cash answered the action claiming she had an ownership interest in the Property and was not a tenant.[13] On March 31, 2014, Mr. Jackson filed a second action ("Jackson II") seeking a determination that Ms. Cash did not have a tenancy or right to possess the Property.[14] On February 28, 2014, Mr. Jackson, by counsel, filed a Motion to Dismiss Jackson I on the grounds that, as far as counsel was concerned, the facts did not "support the existence of a landlord-tenant relationship."[15] On September 10, 2015, Ms. Cash recorded the Cash Deed in the land records of the District of Columbia.[16] On June 26, 2016, after the Cash Deed was recorded, Mr. Jackson filed a Notice of Lis Pendens (the "Lis Pendens") on the Property alleging that his signature on the Cash

---

[11] *See* Ex. O, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Aug. 14, 2023), ECF Nos. 151-15.

[12] Compl., *Jackson v. Cash*, No. 2013 LTB 009354/2013 CA 004159 R(RP) (D.C. Sup. Ct. Apr. 12, 2013). The case was certified to the Civil Division of the Superior Court on June 19, 2013 because Ms. Cash filed a Plea of Title. Although not admitted, the Court can take judicial notice of the filing of the action. Fed. R. Evid. 201(c). Furthermore, Mr. Jackson, prior to his death, relied upon this filing in his Motion for Summary Judgment filed with the Superior Court. *See*, Michael Jackson's Mot. for Summ. J. on Plea of Title and for Release of Lis Pendens, *Jackson I* (D.C. Sup. Ct. Nov. 17, 2014).

[13] Answer & Affirmative Defenses, *Jackson v. Cash*, No. 2013-CA-004159-R(RP) (D.C. Sup. Ct. July 8, 2013).

[14] Compl., *Jackson v. Cash*, 2014 LTB 006268 (D.C. Super. March 31, 2014).

[15] Mot. to Dismiss Case No. 2013 LTB 9354, *Jackson I* (D.C. Sup. Ct. Feb. 28, 2014).

[16] Ex. A., ECF No. 151-01; *see also* Michael Jackson's Mot. for Summ. J. on Plea of Title and for Release of Lis Pendens at Ex. A, *Jackson I* (D.C. Sup. Ct. Nov. 17, 2014).

Deed was forged.[17] On February 1, 2017, Mr. Jackson, by counsel, filed a Stipulation of Dismissal of Jackson I.[18]

On March 28, 2017, Mr. Jackson again returned to Superior Court, filing a third complaint ("Jackson III") to quiet title as to the Property due to the existence of both the Cash Deed and the Lis Pendens.[19] Jackson III alleged that Ms. Cash was delinquent on payments on the Mortgages and the servicer had initiated foreclosure proceedings on the Property. Jackson III further alleged that Mr. Jackson was unable to make ongoing payments on the Property. For the first time, Jackson III raised questions of fraud, forgery, or failure to have a meeting of the minds as to the 2007 Agreement.[20] However, due to the filing of Ms. Cash's bankruptcy case on December 27, 2016, Jackson III was stayed in Superior Court.[21] Due to the pendency of this adversary proceeding, Jackson III was voluntarily dismissed in May 2021.[22]

c.   *Ms. Cash's Bankruptcy Case and Adversary Proceeding*

Ms. Cash's bankruptcy case was originally filed under chapter 13 and later converted to chapter 11 on July 7, 2017.[23] On May 19, 2017, this adversary proceeding ("Jackson IV") was initiated by Mr. Jackson's filing of a complaint seeking substantially the same relief as the Jackson III complaint in Superior Court—to quiet title in the Property.[24] The Complaint was amended twice, with a Motion to Amend being filed December 13, 2017 and granted on January 3, 2018.[25]

---

[17] Ex. N, ECF No. 151-14; *see also* Michael Jackson's Mot. for Summ. J. on Plea of Title and for Release of Lis Pendens, *Jackson I* (D.C. Sup. Ct. Nov. 17, 2014).
[18] Stipulation of Dismissal Without Prejudice, *Jackson I* (D.C. Sup. Ct. Feb. 1, 2017).
[19] Verified Compl., *Jackson v. Cash*, 2017-CA-002021-R(RP) (D.C. Sup. Ct. March 28, 2017).
[20] *See id.*
[21] Official Form 101: Voluntary Petition for Individuals Filing for Bankr., *In re Cash*, Case No 16-00663 (Bankr. D.D.C. Dec. 27, 2016), ECF No. 1; *see also*, Suggestion of Bankruptcy, *Jackson III* (D.C. Sup. April 10, 2017).
[22] Praecipe of Dismissal Without Prejudice, *Jackson III* (D.C. Sup. Ct. May 3, 2021).
[23] *Compare In re Cash*, Case No. 16-00663 (Bankr. D.D.C. Dec. 26, 2016), ECF No. 1, *with* Order Converting Case in Which No Plan Was Confirmed from Chapter 13 to Chapter 11 and Imposing Requirements on Debtor and Chapter 13 Trustee, *In re Cash*, Case No. 16-00663 (Bankr. D.D.C. July 7, 2017), ECF No. 66.
[24] Compl. to Recover Fraudulently Acquired Property (Quiet Title), *Jackson v. Cash (In re Cash)*, AP No. 17-10018 (Bankr. D.D.C. May 19, 2017), ECF No. 1.
[25] *See* Am. Comp. to Recover Fraudulently Acquired Property (Quiet Title), *Jackson IV*, AP No. 17-10018 (Bankr.

On January 3, 2018, Ms. Cash filed both a motion to dismiss the Third Amended Complaint and an amended counterclaim against Mr. Jackson (the "Counterclaim").[26] Specifically, the causes of action in the Complaint and Counterclaim were as follows:

Complaint:
- Count I Fraudulent Transfer of Real Property is not eligible for Homestead Exemption under 11 U.S.C. § 522
- Count II 1235 Irving St. NE, Washington, DC 20017 is not property of the Estate under 11 USC § 541 [sic]
- Count III Quiet Title
- Count IV Unjust Enrichment
- Count V Declaratory Judgment
- Count VI Breach of Contract
- Count VII Constructive Trust

Counterclaims:
- Counterclaim I Declaratory Judgment
- Counterclaim II Quiet Title
- Counterclaim III Breach of Warranty
- Counterclaim IV Defamation
- Counterclaim V Unjust Enrichment
- Counterclaim VI Willful Violation of the Automatic Stay—11 U.S.C. § 362
- Counterclaim VII Avoidance of Unauthorized Post-Petition Transfers—11 U.S.C. § 549
- Counterclaim VIII Recovery of Avoided Transfers—11 U.S.C. § 550
- Counterclaim IX Disallowance of All Claims—11 U.S.C. § 502(d)

On January 16, 2018, Mr. Jackson filed a motion for summary judgment as to the Counterclaims,[27] and on January 30, 2018, Ms. Cash filed a cross-motion for summary judgment on the Complaint.[28] In October 2018, Judge Teel issued a memorandum decision and order dismissing Count VI of the Complaint on Ms. Cash's Motion to Dismiss (subject to limitations not

---

D.D.C. July 28, 2017), ECF No. 10; Third Am. Compl. to Recover Fraudulently Acquired Property (Quiet Title), *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Jan. 3, 2018), ECF No. 46.

[26] Debtor/Def. Michelle R. Cash's Mot. to Dismiss the Am. Compl. of Pl. Michael A. Jackson, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Jan. 3, 2018), ECF No. 47; Answer to Am. Compl. of Pl. Michael A. Jackson and Am. Counterclaims of Debtor/Def. Michelle R. Cash, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Jan. 3, 2018), ECF No. 48.

[27] Mot. for Partial Sum. J., *Jackson III*, AP No. 17-10018 (Bankr. D.D.C. Jan. 16, 2018), ECF No. 50.

[28] Answer to Am. Counterclaims, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Jan. 16, 2018), ECF No. 50.

relevant herein).[29] The same day, Judge Teel also entered a memorandum decision and order dismissing Count IV of the Complaint and otherwise denying the relief requested in the cross-motions for summary judgment.[30] Almost two and a half years later, in March 2021, Judge Teel issued a supplemental decision on Ms. Cash's motions to dismiss and for partial summary judgment whereby he dismissed Count VI of the Complaint as to all equitable claims and denied a request to assert a purchase money mortgage as an equitable remedy, but reinstated the breach of contract claim related to any claim of failure to make a mortgage payment due after December 2016 or a failure to refinance after May 19, 2014 (the "Supplemental Memorandum").[31]

On June 8, 2020, Ms. Cash's chapter 11 case was dismissed with the consent of Ms. Cash.[32] Notwithstanding the dismissal, the Court retained jurisdiction over Jackson IV.[33] The case was reassigned to Judge Gunn on April 14, 2021 after entry of the Supplemental Memorandum.[34] After an unsuccessful mediation, on April 17, 2023, the Court entered an order providing the parties with 21 days to show cause why Counts I and II and Counterclaims VII, VII, and IX should not be dismissed as moot due to the dismissal of Ms. Cash's underlying bankruptcy case.[35] By order entered May 11, 2023, Counts I and II and Counterclaims VII, VII, and IX were dismissed as

---

[29] Mem. Decision and Order Re: Def's Mot. to Dismiss, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Oct. 29, 2018), ECF No. 83; Order Dismissing Count VI of P.'s Third Am. Compl., *Jackson*, AP No. 17-10018 (Bankr. D.D.C. Oct. 29, 2018), ECF No. 84.

[30] Mem. Decision and Order Re Pl.'s Mot. for Partial Sum, J, and Def.'s Cross-Mot. for Partial Sum. J., *Jackson*, AP No. 17-10018 (Bankr. D.D.C. Oct. 29, 2018), ECF No. 85; Order Dismissing Count IV of Pl.'s Third Am. Compl., *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Oct. 29, 2018), ECF No. 86.

[31] Suppl. Mem. Decision and Order Re Def.'s Mot. to Dismiss and Def.'s Mot. for Partial Sum. J., *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. March 1, 2021), ECF No. 107.

[32] Consent Order Granting United States Trustee's Mot. to Dismiss Case, *In re Cash*, Case No. 16-00663 (Bankr. D.D.C. June 8, 2020), ECF No. 168.

[33] "The order below is signed. This order does not effect a dismissal of Adversary Proceeding No. 17-10018, with the issue of whether the court should retain jurisdiction over that adversary proceeding (in which the parties have expended substantial efforts) to be an issue for resolution in the adversary proceeding." *Id.*

[34] *See* Docket Event, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. April 14, 2021); Docket Event, *In re Cash*, Case No. 16-00663 (Bankr. D.D.C. Sept. 14, 2020).

[35] Order, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. April 17, 2023), ECF No. 142. In the same order the Court laid out its basis for retaining jurisdiction over the remaining "related to" causes of action found in Counts III, IV, V, VI, and VII and Counterclaims I, II, III, IV, V, and VI.

8

moot.[36]

Unfortunately, after mediation concluded but before the matter was set for trial, Mr. Jackson passed away.[37] As a result, on August 16, 2023, Ms. Cash filed an emergency motion to dismiss the Complaint[38] based upon Bankruptcy Rule 7025, which requires a court to dismiss a case with a deceased party if a motion for substitution has not been filed within 90 days of the notice of death. The Motion did not ask for the Counterclaims to be dismissed.[39] By Order entered on August 21, 2023, the Court dismissed the Complaint under Bankruptcy Rule 7025(a), and set a one-day trial on the remaining Counterclaims for August 29, 2023.[40]

At Trial, Ms. Cash presented evidence on the remaining six Counterclaims: Counterclaim I—Declaratory Judgment, Counterclaim II—Quiet Title; Counterclaim III—Breach of Warranty, Counterclaim IV—Defamation; Counterclaim V—Unjust Enrichment (in the alternative to Counterclaims I and II); and Counterclaim VI—Willful Violation of the Automatic Stay. During Trial, Ms. Cash presented unopposed evidence in support of her causes of action, similar to an ex parte proof hearing for a default judgment. At the conclusion of Trial, the Court took the matter under advisement.

### III. Discussion

*a. Declaratory Judgment and Quiet Title*

Ms. Cash seeks a declaratory judgment that: (i) she is the fee simple owner of the Property; (ii) Mr. Jackson (or his estate) has no interest in the Property; and (iii) there was never a landlord-tenant relationship between the parties. A declaratory judgment is appropriate when the judgment

---

[36] Order Dismissing Causes of Action as Moot, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. May 11, 2023), ECF No. 145.
[37] *See* Audio Tr. Hr'g May 17, 2023, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. May 18, 2023), ECF No. 149.
[38] Emergency Mot. for J. as a Matter of Law Or, in the Alternative, Mot. to Dismiss Third Am. Compl., *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Aug. 16, 2023), ECF No. 153.
[39] *Id.*
[40] Order Dismissing Third Am. Compl., *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Aug. 2, 2023), ECF No. 158.

9

will serve a useful purpose in clarifying the legal relations at issue or will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *See Glenn v. Fay*, 222 F. Supp. 3d 31, 36 (D.D.C. 2016); *see, e.g.*, *Hashemite Kingdom of Jordan v. Layale Enters. (In re B-727 Aircraft)*, 272 F.3d 264, 270 (5th Cir. 2001); *U.S. Bank Nat'l Ass'n v. State Bank & Tr. Co.*, 45 F. Supp. 3d 582, 591 n.4 (S.D. Miss. 2014). The party seeking a declaratory judgment must prove their case by a preponderance of the evidence. *See, e.g.*, *In re Thompson*, 177 B.R. 443, 450 (Bankr. E.D.N.Y. 1995).

Although pled as a separate count, for the Court to find that Ms. Cash is the record owner of the Property the Court must also quiet title in favor of Ms. Cash, which would necessarily include striking Mr. Jackson's Lis Pendens. "In a quiet title action, the plaintiff asks the court to declare that he or she has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it." *Kemp v. Eiland*, 139 F. Supp. 3d 329, 337–38 (D.D.C. 2015) (quoting 65 Am. Jur. 2d Quieting Title § 1). In both actions, the burden of proof is on Ms. Cash to show that she has good title or a right superior to that of Mr. Jackson. *Id.* at 338 (quoting *Jessup v. Progressive Funding*, 35 F. Supp. 3d 25, 36 (D.D.C. 2014) (quoting 74 C.J.S. Quieting Title § 77 (2014)). The proof does not have to be absolute, instead Ms. Cash only has to prove title better than that of Mr. Jackson. *Id.*

As noted by Judge Teel in his previous opinions in this case, much ado was raised during motions practice in this matter on the question of the validity of the 2007 and 2011 Agreements and the Cash Deed, including but not limited to the validity of the signatures thereon. In those same previous Judge Teel opinions, the validity of the signatures on the 2007 Agreement and Cash Deed were found to involve disputes of material fact to be addressed at trial. However, at Trial all

10

evidence supported Ms. Cash's position that the documents were valid and that the parties intended to transfer title in the Property to Ms. Cash subject to the terms of the 2007 Agreement.

The 2007 Agreement clearly contemplates a transfer of title to Ms. Cash and does not call for a delay in such transfer. The 2007 Agreement only calls for an initial two-year period in which Mr. Jackson would maintain the Mortgages in his name, not title to the Property. The Cash Deed was executed contemporaneously with the 2007 Agreement, and although it was not recorded until 2015, such delay was neither required nor necessary in order for Ms. Cash's right to record the Cash Deed to mature. On its face, the 2007 Agreement provides for the immediate right of Ms. Cash to transfer title to the Property to her name.

Furthermore, nothing in the 2007 Agreement required a return of title to the Property to Mr. Jackson if Ms. Cash defaulted in the payment or refinance terms thereunder—in fact the 2007 Agreement itself is silent as to remedies on default. The only operative term is that Mr. Jackson would transfer the title to Ms. Cash and Ms. Cash would assume certain financial obligations. Based upon the evidence at Trial, the Court finds that Ms. Cash has proven by a preponderance of the evidence that she has superior right to title in the Property, and holds a fee simple interest therein.[41] To the extent the Lis Pendens filed by Mr. Jackson is inconsistent with this finding, it is invalid and should be stricken from the land records of the District of Columbia so that Ms. Cash holds clean title to the Property.

    b. *Breach of Warranty*

Ms. Cash alleges that the language in the Cash Deed created an express warranty by Mr. Jackson to "support Debtor's claim of fee simple interest in the Property."[42] Specifically,

---

[41] The Court recognizes that had Mr. Jackson lived and participated in the Trial, the factual questions herein may have been much more complex and nuanced based upon the extensive arguments and briefing in this case, in the dismissed Superior Court action, and in the previous memoranda issued by Judge Teel.
[42] Compl. at 24, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Jan. 3., 2018), ECF No. 48.

11

Ms. Cash points to the language in the Cash Deed whereby Mr. Jackson "covenant[s] that he will warrant especially the property hereby conveyed; and that he will execute such further assurances of said land as may be requisite."[43] Ms. Cash claims that this language created an express "covenant of warranty and further assurances" that was clouded by Mr. Jackson's filing of the Lis Pendens.[44]

There is scant case law interpreting the language of D.C. Code § 42-605[45] on the covenant created by a grantor in a deed with special warranty language as is present in the Cash Deed. The statute creates a presumption that in deeds with a special warranty, the grantor (here, Mr. Jackson), and his "heirs, devisees, and personal representatives" will warrant and defend the property to the grantee (here, Ms. Cash) "against the claims and demands of the grantor and all persons claiming or to claim by, through, or under him." D.C. Code § 42–605 (2025). Thus, Counterclaim III appears to allege that by raising a factual challenge to the veracity of the Cash Deed and the 2007 Agreement, Mr. Jackson violated the presumed express warranty to refrain from the same contained in the Cash Deed. In other words, Ms. Cash seeks to have this Court find that having a deed with special warranty language necessarily precludes the grantor from raising arguments regarding fraud, invalidity, forgery, or other defenses to the veracity and/or validity of the document.

The Court declines to extend the language of the statute to allegations regarding the validity of the document—to do otherwise would open a Pandora's Box of potential for fraudulent deeds

---

[43] Cash Deed, Ex. A, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Aug. 14, 2023), ECF No. 151-1.
[44] Compl. at 25, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Jan. 3., 2018), ECF No. 48.
[45] D.C. Code § 42–605 (2025). Special warranty:
> A covenant by a grantor in a deed conveying real estate, "that he will warrant specially the property hereby conveyed," or a grant of real estate in which the granting words are followed by the words "with special warranty," shall have the same effect as if the grantor had covenanted that he, his heirs, devisees, and personal representatives will forever warrant and defend the said property unto the grantee, his heirs, devisees, personal representatives, and assigns against the claims and demands of the grantor and all persons claiming or to claim by, through, or under him.

12

without any legal recourse for the review or challenge thereof. Thus, while ultimately the claims of Mr. Jackson were dismissed prior to Trial due to his passing, as pled in Jackson III, the Complaint herein, and the Lis Pendens, such allegations are not *per se* a breach of the implied warranty. Because the dismissal of the action was due to Mr. Jackson's death and not a determination on the merits of Mr. Jackson's allegations, the Court finds that Ms. Cash has not shown a breach of the warranty found in the Cash Deed and is not entitled to damages related thereto.

    c. *Defamation*

Ms. Cash claims that Mr. Jackson defamed her through the language included in the recorded Lis Pendens and Jackson III alleging the forgery of his signature and other fraudulent actions on behalf of Ms. Cash.[46] In order to state a claim for defamation, Ms. Cash must establish that: (1) Mr. Jackson made a false and defamatory statement concerning her; (2) Mr. Jackson published the statement without privilege to a third party; (3) Mr. Jacksons' fault in publishing the statement amounted to at least negligence; and (4) either the statement was actionable as a matter of law irrespective of special harm or that its publication caused Ms. Cash special harm. *See Beeton v. Dist. of Columbia*, 779 A.2d 918, 923 (D.C. 2001).

There are recognized exceptions to defamation causes of action, specifically relevant herein is the judicial proceedings privilege. This privilege "affords an attorney and his or her client absolute immunity from actions in defamation for communications related to judicial proceedings." *Park v. Brahmbhatt*, 234 A.3d 1212, 1215 (D.C. Ct. App. 2020) (internal quotations omitted). For this privilege to apply, the statement must have been (1) made in the course of or preliminary to a judicial proceeding and (2) be related in some way to the underlying proceeding.

---

[46] Compl. at 25–26, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Jan 3, 2018), ECF No. 48.

*Id.* As to Jackson III, the statements thereunder clearly fall squarely within the judicial proceedings privilege. Although ultimately dismissed as a result of the pendency of this adversary proceeding, the privilege clearly extends to any matter related to that action. Similarly, the Lis Pendens references previous litigation between the parties and raises many of the same issues ultimately alleged in Jackson III and as such are preliminary to a judicial proceeding sufficient to be protected by the privilege.[47]

These allegations in this adversary proceeding are similar to those raised in Jackson III, which ultimately were not heard by this Court due to the passing of Mr. Jackson, but which withstood both a motion to dismiss and motion for summary judgment sufficient in order to have issues of fact determined at trial. Thus, even if the judicial proceedings privilege did not apply to the Lis Pendens, the Court finds that Ms. Cash did not establish that at the time the allegations were made that the question of their falsity was a legal question upon which no court had ruled. For these reasons, the Court finds that Ms. Cash has failed to prove she is entitled to recover for defamation.

    d.  *Violation of the Automatic Stay*

Ms. Cash seeks a determination that by filing Jackson III after she filed her chapter 13 petition, Mr. Jackson willfully violated the automatic stay of § 362(a) by continuing to pursue Jackson III.[48] The filing of a bankruptcy petition acts as an automatic stay of judicial proceedings pending against the debtor.[49] Under § 362(k), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees,

---

[47] *See, e.g.*, *Bower v. Stein Eriksen Lodge Owners Ass'n, Inc.*, 201 F. Supp 2d 1134, 1138–39 (C.D. Utah 2002) ("The lis pendens is also privileged. '[A] lis pendens is, in effect, a republication of the pleadings. Since the publication of the pleadings is absolutely privileged, the republication thereof by recording a notice of lis pendens is similarly privileged.'") (internal citation omitted).
[48] Compl. at 28, *Jackson IV*, AP No. 17-10018 (Bankr. D.D.C. Jan. 3, 2018), ECF No. 48.
[49] 11 U.S.C. § 362(a).

14

and, in appropriate circumstances, may recover punitive damages.[50] To recover under § 362(k), a plaintiff must show that (1) the defendant violated the stay imposed by § 362(a); (2) the violation was willful; and (3) the plaintiff was injured by the violation. *See, e.g.*, *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). Once the first two elements are shown, the burden is on the debtor to establish, by a preponderance of the evidence, actual damages. *See Skillforce, Inc. v. Hafer*, 509 B.R. 523, 533 (Bankr. E.D. Va. 2014). "For an act to be willful, the creditor 'need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay.'" *In re Lyle*, 662 B.R. 229, 234–35 (Bankr. E.D.N.C. 2024) (internal citations omitted).[51]

Jackson II was dismissed in January 2016, eleven months prior to the filing of the Debtor's December 2016 bankruptcy petition. A review of the Debtor's list of creditors[52], statement of financial affairs[53], schedules[54], amended list of creditors[55], and certificate of service on her chapter 13 plan[56] all fail to establish that Mr. Jackson was ever put on notice of the Debtor's chapter 13 case.[57] He is not listed, scheduled, or otherwise included as a notice party in any of the pleadings.

---

[50] 11 U.S.C. § 362(k). Punitive damages may be awarded under § 362(k) in the discretion of the court in appropriate circumstances such as when the "creditor has demonstrated egregious, vindictive or intentional misconduct." *In re Nimitz*, Case No. 19-12741-BFK, 2019 WL 7580141 (Bankr. E.D. Va. Dec. 16, 2019) (citing *In re Gallo*, No. 07-10958C-13G, 2012 WL 3930320 (Bankr. M.D. N.C. Sept. 10, 2012)).

[51] The Court is aware of the split of authority in matters following the Supreme Court's decision in *Taggart v. Lorenzen*, 587 U.S. 554 (2019) as to whether a willful violation of the automatic stay under § 362(k) requires a consideration of whether the violating creditor had a "fair ground of doubt" as to whether the conduct may be lawful notwithstanding the stay. The Court does not need to make a determination of the applicability of the *Taggart* standard here because the Court finds that at the time of the alleged violation, Mr. Jackson was not on notice of the pending bankruptcy case.

[52] List of Creditors and Mailing Matrix, *In re Cash*, Case No. 16-00663 (Bankr. D.D.C. Dec. 27, 2016), ECF No. 4.

[53] Statement of Financial Affairs for Individuals Filing for Bankruptcy, *In re Cash*, Case No. 16-00663 (Bankr. D.D.C. Feb. 7, 2017), ECF No. 18.

[54] Summary of Your Assets and Liabilities and Certain Statistical Information, *In re Cash*, Case No. 16-00663 (Bankr. D.D.C. Feb. 7, 2017), ECF No. 21.

[55] Amendment to List of Creditors and Mailing Matrix to add Previously Unlisted Entity or Entities, *In re Cash*, Case No. 16-00663 (Bankr. D.D.C. Feb. 7, 2017), ECF No. 17.

[56] Chapter 13 Plan & Notice of Deadline to Object to Confirmation, *In re Cash*, Case No. 16-00663 (Bankr. D.D.C. Feb. 7, 2017), ECF No. 23.

[57] While these documents were not before the Court in Jackson IV, the Court may take judicial notice of documents on its docket.

Mr. Jackson does not appear at all in the Debtor's underlying chapter 13 matter until May 2017 when a notice of appearance was filed by counsel for Mr. Jackson in the bankruptcy case, at which point counsel filed Jackson IV, a motion for relief from stay, and a corresponding proof of claim.[58]

Ms. Cash did not introduce any additional evidence at trial that would counteract the record in the underlying case, and therefore the Court finds that she has failed to meet her burden to establish that Mr. Jackson was on notice of the bankruptcy case and the automatic stay on the date that Jackson III was filed in the Superior Court. Having failed to meet that burden, Ms. Cash cannot meet her burden to show that the filing of Jackson III was a willful violation of the automatic stay and is not entitled to relief under § 362(k).

*e. Unjust Enrichment*

Ms. Cash pled a count for unjust enrichment as an alternative form of relief to her counts for a declaratory judgment and quieting of title. Because the Court rules for Ms. Cash on the declaratory judgment and quiet title claims, it does not reach the unjust enrichment claim and it is denied as moot.

### IV.    Conclusion

For the reasons stated herein, the Court finds for Ms. Cash on Counterclaims I and II and quiets title to the Property in her name and orders that the Lis Pendens filed by Mr. Jackson be stricken from the land records. The Court further finds that Ms. Cash has not met her burden to recover on Counterclaims III, IV, and VI and denies judgment on each. Finally, because the Court

---

[58] *See* Compl. to Recover Fraudulently Acquired Property, *In re Cash*, Case No. 16-00663, (Bankr. D.D.C. May 19, 2017), ECF No. 45; Mot. for Relief of Automatic Stay and to Determine Property of the Estate under 11 U.S.C. § 1115 and 11 U.S.C. § 541, *In re Cash*, Case No. 16-00663, (Bankr. D.D.C. May 21, 2017), ECF No. 47; Notice of Opportunity to Object to Creditor's Mot. for Relief of Automatic Stay and to Determine Property of the Estate under 11 U.S.C. § 1115 and 11 U.S.C. § 541, Notice of Deadline to File and Serve Objection and Notice of Hearing, *In re Cash*, Case No. 16-00663, (Bankr. D.D.C. May 21, 2017), ECF No. 49; Notice of Opportunity to Object to Creditor's Mot. for Relief of Automatic Stay and to Determine Property of the Estate under 11 U.S.C. § 1115 and 11 U.S.C. § 541, Notice of Deadline to File and Serve Objection and Notice of Hearing, *In re Cash*, Case No. 16-00663, (Bankr. D.D.C. May 21, 2017), ECF No. 50.

finds in Ms. Cash's favor on Counterclaims I and II, Counterclaim V (pled in the alternative) is moot. A separate judgment order shall issue.

[Signed and dated above.]

Copies to: All counsel of record.